LANCASTER, TICER AND TREVATHAN *v.* STATE.

4380                                              186 S. W. 2d 673

Opinion delivered April 2, 1945.

*Dene H. Coleman,* for appellants.

*Guy E. Williams, Attorney General,* and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

MILLWEE, J. On September 27, 1944, eight citizens of Stone county filed an affidavit with the regular judge of the Stone circuit court alleging they had reasonable grounds to believe that defendants had committed criminal contempt against the court by writing, printing and circulating a certain circular in the form of a political announcement of Sgt. Lonnie Ackerman for representative of Stone county. A copy of the circular was attached and made an exhibit to the affidavit and contains the following sentence: "As time goes on we intend to thoroughly discuss Little Jackie Williamson's so-called Democratic nomination, which was not a nomination at all but an appointment by a corrupt and rotten court." It was alleged that this statement referred to a decision rendered in the Stone circuit court by J. Paul Ward, judge on exchange, on June 26, 1944, in the case of Jack Williamson v. L. O. Thompson, Chairman, and John H. Gray, Secretary of the Stone County Democratic Central Committee.

Pursuant to an order of the court, separate citations were issued for the appearance of defendants on November 20, 1944, to show cause why they should not be punished for criminal contempt. Defendants filed their joint demurrer to the order and citation, alleging that the circular did not refer to the Stone circuit court, that there never had been any litigation in said court involving the nomination of Jack Williamson, and that the proceeding mentioned in the order and citation had been finally disposed of, and the court adjourned, long before the publication of said circular. This demurrer was overruled and separate responses were filed by defendants on November 23, 1944. The cause proceeded to trial before the court upon the affidavits, the separate responses and oral testimony introduced by the state. The court, after making extensive findings, adjudged each of the defendants guilty. Lancaster was fined $150, and given a 20-day jail sentence, which was suspended. Ticer was fined $50 and Travathan $25. The convictions are here for review by writ of certiorari.

The evidence, when viewed in the light most favorable to the state, reflects the following facts: Lancaster, who was the author of the circular, delivered a typewritten manuscript copy thereof to Ticer, who had authorized the campaign committee of Sgt. Ackerman to use his (Ticer's) name as chairman in all campaign literature. Ticer delivered the copy containing his typewritten signature to the local paper at Mountain View, the county seat of Stone county, but publication was refused because the editor felt it would be libelous. It was then taken by Lancaster to Batesville in Independence county where respondent Trevathan was employed to print the circular. After the circular was printed in the shop managed by Trevathan, it was delivered by him to a bus driver for delivery to Lancaster at Mountain View. Upon receipt of the printed circulars, Lancaster caused them to be distributed at Mountain View.

Defendants first contend that the court committed error in refusing to sustain their demurrer to the charge, because the language of the circular does not specifically charge the Stone county circuit court with being "corrupt and rotten" in some specific judicial action or court proceeding. We think defendants are in error in this contention for the reason that the affidavit upon which the citations for contempt were issued specifically charged that the alleged offensive statement referred to a certain decision rendered by the court on June 26, 1944, in the case of Jack Williamson v. L. O. Thompson, et al., and none other. The same court that tried defendants conducted the proceedings which it is alleged the offensive language referred to, and, in his findings in the instant case, the court reviewed its judgment in the prior proceedings when it held that the name of Jack Williamson's opponent should not be placed on the ticket in the democratic primary election. We think the court's determination that such proceedings was the one to which the circular referred is amply supported by the record.

It is also insisted that there was a purge of the contempt by defendants, when by their sworn responses, they alleged that the language did not, could not, and was

not intended to refer to the circuit court of Stone county. Defendants say that they are absolved by this statement under oath, which should have been taken and accepted as true by the court. If the language used in the circular is fairly susceptible of different interpretations, defendants' contention should be sustained. The rule which this court has followed is laid down in 17 C. J. S., p. 109, as follows: "Thus it is frequently held in cases of indirect criminal contempt where the acts charged are ambiguous and capable of two constructions that a disclaimer of intent under oath is conclusive and entitles defendant to a discharge. However, a defendant is not entitled to a discharge on filing a disclaimer of intent under oath if the conduct relied on as constituting the offense amounts to a contempt regardless of want of intention. . . . Further, a sworn disclaimer of intent is unavailing even in cases where intention is an element of the offense charged, if the alleged contemptuous acts are unambiguous and subject only to the one reasonable construction that a contempt was intended."

In *Freeman* v. *State,* 188 Ark. 1058, 69 S. W. 2d 267, relied on by defendants, it was held that a newspaper article was susceptible of a contemptuous and an innocent construction, and that the contempt was purged by disavowal by the owner and editor of the newspaper made under oath of any intent to influence or embarrass the court or to cast any aspersions upon its integrity and fidelity to duty. But we are convinced that but one interpretation can be given the language of the circular in the case at bar. To refer to the judicial action of a court in the performance of its solemn duty as an appointment by a "corrupt and rotten court" is insusceptible of an innocent construction. This language is necessarily offensive, insulting and contemptuous when it refers to an official act of the court, and is calculated to create disregard for judicial authority.

Finding no error in the record, the judgment is affirmed.