PHILIP KLEIN, trading as Phil's Distributors,
Appellant,

*vs.*

STATE OF DELAWARE,
Appellee,

GENERAL ELECTRIC COMPANY, a corporation of the State of
New York,
Intervenor.

*Supreme Court on appeal, November 21, 1956.*

*David Snellenburg, II, of* Killoran & Van Brunt, Wilmington, for appellant.

*H. James Conaway, Jr., of* Morris, James, Hitchens & Williams, Wilmington, for intervenor.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

BRAMHALL, Justice: This appeal relates to the necessity of proof of the continued existence of a fair trade agreement in a proceeding for criminal contempt arising out of an injunction against violating the agreement and to the sufficiency of proof of specific intent on the part of appellant to violate the injunction.

Although the original plaintiff in the present procedure was General Electric Company, a corporation of the State of New York, the State of Delaware was made the appellee, apparently for the reason that the Chancellor's opinion in the matter assumed that the State was

the prosecuting party. General Electric was added here as a party by stipulation. No question of proper parties was raised in the lower court or here and we do not pass upon the correctness of the procedure adopted below.

On September 22, 1954, the appellant, Philip Klein, trading as Phil's Distributors, was enjoined from selling fair-traded merchandise produced or distributed by General Electric Company at prices less than the prices stipulated in G.E.'s fair trade contracts, as then constituted and as supplemented. Developments from the time of the granting of the injunction to the time of the institution of the contempt proceedings are pertinent.

Within approximately one month after the issuance of the injunction Klein filed a motion for construction of the injunction order, stating therein that he had offered back to G.E. his stock of radios at his cost plus 5% and requesting the Chancellor to construe the injunction so as to permit him to engage in a close-out sale of these articles or to modify the injunction to permit such sale. The motion was denied. On January 10, 1956, G.E. sent a letter to Phil's Distributors, advising that G.E. radios were being fair-traded as of January 1, 1956. Under date of February 25, 1956, Klein wrote the following letter to G.E.:

> "We have about $5,000 worth of radios that we purchased from your company in December, when they were not on the fair trade listings. Since that time, you have put them on fair trade, and we cannot sell them for the price that you are dictating.

> "We would like to return the said merchandise to you at the price we would normally sell them for, which is 20% above our cost. Kindly let us know when you want us to return this merchandise, and if we don't hear from you within 10 days, we will sell out the merchandise at what we think is a fit price."

On March 16, 1956, Klein sold two G.E. model 913 radios for less than the fair trade price. The filing of the petition for contempt followed.

At the hearing below Klein conceded that the radios were fair-traded as of January 1, 1956, and that he had notice of this action. He contended that he was not guilty of violating the injunction since the radios were purchased by him prior to January 1, 1956, the date on which G.E. radios were listed on fair trade. The Chancellor sustained Klein's contention as to one of the radios, but found him guilty of contempt as to the other because of the fact that the latter radio showed on its face that it was not manufactured until February 17, 1956. Klein appeals.

█ Actions for contempt of court may be either civil or criminal in nature, or both. *Donner v. Calvert Distillers Corp.*, 196 *Md.* 475, 77 *A.2d* 305. Both parties in their briefs and in their arguments have treated the alleged contempt as criminal in nature. We shall accept their assumption as correct.

The first question we must consider is whether or not it was necessary for G.E. to prove specifically the existence of the fair trade contract as of March 16, 1956, the date on which the sale in question occurred. Klein contends that no such proof was offered and that because of this omission he cannot be convicted of contempt. He alleges that the evidence introduced relating thereto was at most hearsay.

As we understand Klein's objection, he does not dispute that the fair trade contract was in existence at the time of the issuance of the injunction; his objection is to the lack of proof in the contempt proceedings showing specifically the continued existence of the contract up to and including the day of the sale of the radio in question. It is true that no evidence was offered specifically proving that the fair trade contract had not been cancelled. However, we do not think that under the circumstances of this case such proof was necessary.

██ There is a presumption that something of a continuous nature which has been proven to have been in existence at a particular time, in the absence of proof to the contrary, exists at a subsequent time and the burden is on the party seeking to prove its termination to establish that fact. *Donner v. Calvert Distillers Corp.*,

*supra; Com. v. Fragassa, 278 Pa.* 1, 122 *A.* 88; *State v. Costa, 78 Vt.* 198, 62 *A.* 38. See 1 *Wharton's Criminal Evidence,* § 142, *p.* 158. Such presumption or inference of course is not without its limitations; it is only an assumption of fact depending for its weight on the circumstances of the particular case. *State v. Olson, 87 Mont.* 389, 287 *P.* 938.

■ We think that under the facts of this case there existed a sufficient presumption which unrebutted was sufficient to warrant the Chancellor in assuming the continued existence of the contract. In the first place, the contract itself provided that it should remain in force until terminated by either party giving to the other ten days' written notice of an intention to cancel. There is nothing in the record to show the giving of any such notice. In addition, Klein by his own actions recognized the continued existence of the contract by the notice of motion for construction which he filed on November 3, 1954, and by the letter of February 25, 1956, to G.E. relating to the radios in question, in which Klein stated: "You have put them on fair trade, and we cannot sell them for the price that you are dictating." This was approximately three weeks before the sale of the radio in question. The objection is overruled.

■ The next question which we must determine is whether or not the radio which Klein sold was subject to fair trade. Klein contended that with the exception of radios which he might have acquired by exchange, all the G.E. radios in his stock were purchased by him prior to January 1, 1956, the date on which radios became subject to fair trade. He specifically denied that, with the exception of two or three which he might have acquired by exchange, he had purchased any model 913 radios after January 1, 1956. He testified that he frequently exchanged radios, because of color or otherwise. He assumed that the radio which was sold on March 16, 1956 was so acquired. However, neither he nor the two witnesses from wholesale or distributing houses who were called on his behalf could state when or under what circumstances the radio in question was acquired.

The Chancellor found it unnecessary to evaluate this evidence. He assumed its truth but held that Klein at the time of the sale was

charged with notice that the radio in question was subject to fair trade and that in selling it Klein violated the injunction.

We think that unquestionably the radio when acquired by Klein was subject to fair trade. The manner in which he acquired it makes no difference; the fact remains that it was acquired after G.E. radios were placed under fair trade. It is not disputed that Klein knew that radios were subject to fair trade. It is also admitted that Klein sold the radio for less than fair trade price. There can be no doubt therefore but that the radio in question was subject to the fair trade agreement.

Klein contends that he is not in any event guilty of contempt. He reasons thus: The contempt of which he is charged is criminal contempt. He denies that he had any intention to commit a contempt upon the court. It is necessary before he can be convicted of this offense that a specific intent must be shown. There was no evidence before the Chancellor showing any specific criminal intent. Therefore, he says, he cannot be convicted.

It is true that some aspects of the law of contempt are far from clear and that many conflicts and contradictions are disclosed in the reports. According to some cases, much depends upon whether or not the contempt is criminal or civil, or whether direct or indirect. But it is not necessary for us here to go into these phases of the law of contempt.

Accepting Klein's contention that a specific intent must be proved, it is not necessary that it be established by positive evidence. Intention is a fact which cannot be positively known to other persons. No one can testify directly concerning it. Therefore such proof must necessarily consist of an inference which the jury may find from the established facts. 1 *Wharton's Criminal Evidence*, § 80, *p.* 96. There is a rebuttable inference that the natural and probable consequences of an act deliberately done were so intended by the person committing the same. 1 *Wharton's Criminal Evidence*, § 81, *p.* 98. It is only in case of a dispute of fact or where the interpretation of an undisputed

fact is obscure or doubtful that the question of intent becomes important. A disclaimer of intent is no defense where the contempt clearly appears from the circumstances constituting the act. *In re Singer,* 109 *N.J.Eq.* 103, 156 *A.* 427; *Boorde v. Com.,* 134 *Va.* 625, 114 *S.E.* 731; *State ex rel. Neumann v. Keller,* 36 *N.M.* 81, 8 *P.2d* 786; *Lancaster, Ticer and Trevathan v. State,* 208 *Ark.* 412, 186 *S.W.2d* 673; *City of Vernon v. Superior Court,* 38 *Cal.2d* 509, 241 *P.2d* 243. If the rule were otherwise one in contempt might always purge himself by an assertion of good intention. *State ex rel. Hurley v. District Court,* 76 *Mont.* 222, 246 *P.* 250.

■ According to his own testimony and according to the stipulation of his counsel at the hearing before the Chancellor, Klein knew at the time of the sale in question that G.E. radios were fair traded. Admittedly he sold the radio below the minimum resale price. His defense that the radio in question must have been received in exchange for another radio not subject to fair trade was not accepted by the Chancellor, and very properly so. The evidence is undisputed that he violated the injunction. Under these circumstances his assertion that he did not intend to show a contempt of the court is of no avail.

The judgment will be affirmed.