**GENERAL ELECTRIC COMPANY, a corporation of the State of New York, Plaintiff,**

v.

**Harold SELTZER, trading as Harold's, Delaware Discount House, Defendant.**

**Civ. A. No. 1771.**

United States District Court
D. Delaware.

March 19, 1958.

H. James Conaway, Jr. (of Morris, James, Hitchens & Williams), Wilmington, Del., for plaintiff.

Harold Leshem, Wilmington, Del., for defendant.

LAYTON, District Judge.

Before me is a motion by plaintiff to dismiss a contempt proceeding instituted by it against defendant under the following circumstances. On December 23, 1955, this Court entered a permanent and perpetual injunction against defendant restraining him, his agents, etc., from, among other things, wilfully and knowingly:

"(1) Advertising, selling and/or offering for sale any product, commodity or small appliance, such as electric mixers, sandwich grills, toasters, irons, clocks, automatic blankets, fans, heating pads, skillets, coffee makers or percolators and vacuum cleaners, manufactured, produced or distributed by the said General Electric Company, the Plaintiff herein, under the trademark 'General (GE) Electric', at prices less than the prices stipulated in the fair trade contracts entered into pursuant to the Delaware Fair Trade Act [6 Del.C. § 1901 et seq.] between the said General Electric Company, the Plaintiff herein, and any other person or corporation in the State of Delaware, including prices stipulated in supplemental schedules issued pursuant to such contracts;"

Thereafter, on July 12, 1957, the plaintiff filed a petition for the issuance against the defendant of an order to show cause why he should not be held in contempt for violating the injunction above referred to as the result of alleged sales by defendant of General Electric articles at prices below those appearing in plaintiff's fair trade schedules. A hearing was held, evidence taken and counsel instructed to file briefs. Prior to the date when defendant's brief became due, the plaintiff abandoned its national campaign to police Fair Trade practices and made a public announcement of this fact. Other manufacturers have followed suit and the Fair Trade laws may now be in a fair way to become obsolete for lack of any one to see to their enforcement. Moreover, the plaintiff itself, not defendant, has moved that this action for contempt be dismissed. On the other hand, if the order of this Court has been deliberately violated and its dignity flouted, it will never do to extend immunity to defendant merely at the whim of the plaintiff.

There are, of course, two types of contempt, civil and criminal. The one partakes of the nature of the other and only the haziest of boundaries divides the two fields. In general, as said by the United States Supreme Court in Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 498, 55 L.Ed. 797:

"Contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.' * * * But in either event, and whether the proceedings be civil or criminal, there must be an allegation that in contempt of court the defendant has disobeyed the order, and a prayer that he be attached and punished therefor. It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an af-

firmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order."

One of the important distinctions between the two types of contempt, then, is whether the aid of this Court is sought to compel the doing of an act in conformity with its decree or to punish for the fait accompli. And, in an almost exactly similar case, Chancellor Seitz in State v. Klein, Del.Ch.1956, 123 A.2d 740, found the defendant guilty of criminal contempt.

■ Two important distinctions exist between this and the Klein case, however. This contempt proceeding was prosecuted along civil lines as indicated by the caption whereas, it was apparently assumed that the Klein case was criminal in character. Klein v. State, Del., 127 A.2d 84. Secondly, the plaintiff has given up attempting to enforce the Fair Trade laws whereas, in Klein, this same plaintiff was vigorously arguing that the Court adjudge the defendant to be in contempt of its injunction.

The Gompers case above cited is in many ways strikingly analogous to this situation. There the defendants, Gompers and others, were enjoined from further prosecuting a strike and thereafter a contempt proceeding was filed against them by plaintiff. Defendants were found guilty of contempt for violating the injunction. Both cases, the injunction and the contempt proceedings, came to the Supreme Court of the United States upon appeal. Just before the appeal from the injunction came on for argument, this phase of the controversy was settled. The contempt appeal was then argued and the Court reversed, stating in part:

"For, on the hearing of the appeal and cross appeal in the original cause in which the injunction was issued, it appeared from the statement of counsel in open court that there had been a complete settlement of all matters involved in the case of Buck's Stove & Range Co. v. American Federation of Labor [219 U.S. 581, 31 S.Ct. 472, 55 L.Ed. 345]. This court therefore declined to further consider the case, which had become moot, and those two appeals were dismissed. * * * When the main case was settled, every proceeding which was dependent on it, or a part of it, was also necessarily settled,—of course without prejudice to the power and right of the court to punish for contempt by proper proceedings. * * * If this had been a separate and independent proceeding at law for criminal contempt, to vindicate the authority of the court, with the public on one side and the defendants on the other, it could not, in any way, have been affected by any settlement which the parties to the equity cause made in their private litigation.

"But, as we have shown, this was a proceeding in equity for civil contempt, where the only remedial relief possible was a fine, payable to the complainant. The company prayed 'for such relief as the nature of its case may require,' and when the main cause was terminated by a settlement of all differences between the parties, the complainant did not require, and was not entitled to, any compensation or relief of any other character. The present proceeding necessarily ended with the settlement of the main cause of which it is a part. * * * The criminal sentences imposed in the civil case, therefore, should be set aside.

"The judgment of the Court of Appeals is reversed, and the case remanded, with directions to reverse the judgment of the Supreme Court of the District of Columbia, and re-

203

mand the case to that court with direction that the contempt proceedings instituted by the Bucks Stove & Range Company be dismissed, but without prejudice to the power and right of the Supreme Court of the District of Columbia to punish by a proper proceeding, contempt, if any, committed against it."

So, here, this case, in the main, was prosecuted as a civil adjunct of the injunction proceeding. And, here, also the plaintiff's motion to dismiss this proceeding following its decision to stop attempting to enforce the Fair Trade laws, is tantamount to a settlement of the equity or injunction decree.

Upon this narrow ground, then, I shall dismiss the existing contempt petition. However, bearing in mind the concluding remarks in the Gompers case, supra, and after a reconsideration of the record, I may still feel bound to order the United States Attorney to take such further proceedings as may be deemed proper.