SELF v. SELF.

5-89                                    257 S. W. 2d 281

Opinion delivered April 27, 1953.

*Bobby Steel,* for appellant.

*Tom Kidd* and *Shaver, Tackett & Jones,* for appellee.

J. SEABORN HOLT, J.   This appeal presents a contest between the parents of Charles Allen Self, over his custody.  Appellant, Nancy Self, and appellee, Charles Self, were married in Maryland April 11, 1945.  Charles Allen was born to them and is now seven years of age.  They were divorced March 29, 1951, and the court awarded custody of this child to its mother for ten months of each year (the school term) and the father for two months (the vacation period).

Appellee brought the present suit July 3, 1952, asking that the above decree be modified and that he be

given the child's custody with visitation privilege only to the mother. October 13, 1952, after a hearing, the trial court modified its former decree, "that is just turning the present arrangement around," by giving custody of the child to the father for the ten months' school term and to the mother the two months' vacation period.

Both parties have remarried since the divorce, Nancy for a second time, and appellee, now 37 years of age, to his third wife, who is 20. Nancy is living in New York. Nancy's husband is regularly employed and earning approximately $4,000 a year. He is fond of this little boy and is willing to care for him, according to appellant's testimony.

Appellee has been in the military service for the last ten years, has re-enlisted, and holds the rank of master-sergeant, and is also earning about $4,000 a year. Being in the military service, he is subject to orders and frequently moves from place to place and is now stationed in Texas. Appellee has a daughter by his first wife and she has been given its custody without any objections on his part.

The trial court found both parties to be suitable and fit to have the custody of Charles Allen and (quoting from its findings): "Both this father and this mother are all right as far as being moral and Christian and law-abiding people. . . . This little boy is a smart little boy. The mother had him in school in New York last year and he was one of the best in his class, and the father has him in school in Texas this year and he is in the upper third of his class. . . . I predict that the day will come when both the father and the mother, regardless of where the child lives meanwhile, are going to be proud of this boy. He is as fine a child as the Court has seen recently."

The mother's devotion and love for this little boy appears to be unquestioned. The question that confronts us is: Have there been such changed conditions, affecting the welfare of Charles Allen, that would warrant the court's action in modifying the decree, as above indicated?

We have concluded, after reviewing the record, that this question must be answered in the negative, and that the preponderance of the testimony is against the Chancellor's findings. The burden was on appellee, who sought the change, and we hold that he has failed to meet this burden.

His reasons for seeking the boy's change of custody, and a modification of the decree, are given in his own words as follows: "At the time of the decree I was single (and had no place to leave the child but with my parents), since then I have married a good woman. She loves the child and is willing to take care of it and I think it best for the child to be in my care. . . . Q. The only conditions that have changed is the fact that you have remarried and have a wife that can assist you in taking care of the child? A. Yes. Q. And that is all? A. I feel that the child does not get the love and affection he should from his mother. I think he gets better care from my wife and myself. He has gained weight. Q. Are you supporting your first child by your first wife? A. She did not ask for it."

When the custody of a child of the tender age of this little boy is involved, which we think requires that care, love and attention that a natural mother would be more likely to bestow, she should be, and is preferred over the father unless the evidence shows her to be unsuitable and unfit. As indicated, there appears to be no question as to her fitness in this case.

" 'It is the well settled doctrine in this state that the chancellor, in awarding the custody of an infant child or in modifying such award thereafter, must keep in view primarily the welfare of the child, and should confide its custody to the parent most suitable therefor, the right of each parent to its custody being of equal dignity.' . . . This court has always been reluctant to deprive a child of tender years of the care and affection of his mother. (Citing many cases)." *Reynolds* v. *Tassin,* 209 Ark. 890, 192 S. W. 2d 984.

"We have many times said in cases of this kind that the custody of infant children is not awarded by way of

reward to one parent or punishment to the other, but that the controlling consideration in all cases would be the welfare of the child.

"In the case of *Thompson* v. *Thompson,* 209 Ark. 734, 192 S. W. 2d 223, it was held, to quote a headnote: 'The father of a five-year-old child procured a divorce from the child's mother on his cross-complaint. Held, that in the absence of testimony showing the mother to be an unfit person, she should have the custody of the infant.' " *Nutt* v. *Nutt,* 214 Ark. 24, 214 S. W. 2d 366.

" 'While any order as to custody of a child is subject to future modification by the court making it, the rule, uniformly adhered to by us, is that before such modification may be made it must be shown that, after the making of the original order, there has been such a change in the situation as to require, in the interest of the minor, the change to be made, or it must be shown that material facts affecting the welfare of the child were unknown to the court when the first order was made.' . . . 'The party seeking a modification of a divorce decree awarding custody of a minor child assumes the burden of showing such a change in conditions as to justify such modification.' " *Roberts* v. *Roberts,* 216 Ark. 453, 226 S. W. 2d 579.

Accordingly, the decree is reversed for further proceedings consistent with this opinion.