TUPY v. STATE.

5032                                          354 S. W. 2d 728

Opinion delivered March 12, 1962.

*Garvin Fitton* and *Arnold M. Adams,* for petitioner.

*Frank Holt,* Attorney General, by *Thorp Thomas,* Asst. Attorney General, for respondent.

JIM JOHNSON, Associate Justice. On August 26, 1961, a petition in the matter of the Contempt of J. L. Tupy was filed in the Newton County Circuit Court by the prosecuting attorney. On August 28, 1961, Judge Woody Murray, the Circuit Judge of Newton County, issued a citation to the appellant, J. L. Tupy, to show cause why he should not be found in contempt of that

court for statements published by him in a pamphlet entitled "Inside Information About Wrong Doings of Election Commissioners and County Judge of Newton County, Arkansas." A hearing was held on the citation September 5, 1961, with the court finding Tupy guilty of contempt and fixed his punishment at a fine of $25.00 and ten days in jail. The jail sentence was suspended upon his good behavior. The conviction is here for review by writ of certiorari.

Tupy admitted that he was the individual who took the galley sheets to the printer and picked them up and mailed and distributed more than 2,300 slick copies of the pamphlet in question. The objectionable portions of the pamphlet are as follows: At page seven the following language appears—"Because in our opinion the Grand Jury of March 6, 1961, was a set-up. Read end part of accompanying Affidavit, March 17, 1961, where Judge Murray is alleged to have selected the Grand Jury Commissioners on recommendation of Newton 'County Courthouse Officials' in defiance of the rule that creditable electors be consulted for that purpose. County Courthouse Officials' include persons whom we have asked to be indicted." The affidavit referred to above appears at page 17 of the pamphlet and reads as follows:

"The undersigned, Hugh Sparks, H. W. McCraw and J. L. Tupy, all members of the Citizens Committee of Newton County, hereby do solemnly affirm the truth of the following: That at 11:45 a.m. of March 10, 1961, they visited the Honorable Woody Murray, Judge 14th Circuit of Arkansas, in his chambers in the Boone County Courthouse, Harrison, Arkansas, where he told them, among other things, that the Resolutions adopted by the Newton County Grand Jury on March 9, 1961, of which a certified copy was supplied the Citizens Committee by Howard Norton, County and Circuit Clerk, was not an Order of the Court, and that they were not enforceable nor valid at law; and that in his selection of the Jury Commissioners for choosing the panel of Grand Jurors, from which 16 were sworn in on March 6, 1961, he made

the selection on advice of County Courthouse Officials of Newton County."

At page 19 of the pamphlet the following appears: "We believe that justice in this matter is being denied the citizenry of Newton County because of:

(a) A Set-up Grand Jury;

(b) The sterile legerity of the Prosecutor (who is supposed to be the Citizens' attorney);

(c) and a seeming complot to white wash the accused."

The primary question presented here is whether the pamphlet tended to interfere with the orderly conduct of the judiciary.

In the very early case of *State* v. *Morrill,* 16 Ark. 384, this Court said:

"Any citizen has the right to publish the proceedings and decision of this court, and if he deem it necessary for the public good, to comment upon them freely, discuss their correctness, the fitness or unfitness of the judges for their stations, and the fidelity with which they perform the important trust responsed in them, but he has no right to attempt, by defamatory publications, to degrade the tribunal, destroy public confidence in it, and dispose the community to disregard and set at naught its orders, judgments, and decrees. Such publications are an abuse of the liberty of the press, and tend to sap the very foundation of good order and well being in society, by obstructing the course of justice. If a judge is really corrupt, and unworthy of the station which he holds, the constitution has provided an ample remedy, by impeachment or address, where he can meet his accuser face to face, and his conduct may undergo a full investigation. The liberty of the press is one thing, and licentious scandal is another. The constitution guarantees to every man the right to acquire and hold property, by all lawful means but this furnishes no justification to a man to rob his neighbor of his lands or goods."

The petitioner, in his response, said that he had no design to impugn the Court's integrity by the distribution of the pamphlet. This same allegation was made and discussed in *Lancaster, Ticer and Trevathan* v. *State,* 208 Ark. 412, 186 S. W. 2d 673, as follows:

"It is also inissted that there was a purge of contempt by defendants, when by their sworn responses, they alleged that the language did not, could not, and was not intended to refer to the circuit court of Stone County. Defendants say that they are absolved by this statement under oath, which should have been taken and accepted as true by the court. If the language used in the circular is fairly susceptible of different interpretations, defendants' contention should be sustained. The rule which this court has followed is laid down in 17 C. J. S., p. 109 as follows: 'Thus it is frequently held in cases of indirect criminal contempt where the acts charged are ambiguous and capable of two constructions that a disclaimer of intent under oath is conclusive and entitles defendant to a discharge. However, a defendant is not entitled to a discharge on filing a disclaimer of intent under oath if the contempt relied on as constituting the offense amounts to a contempt regardless of want of intention . . . Further, a sworn disclaimer of intent is unavailing even in cases where intention is an element of the offenses charged, if the alleged contemptuous acts are unambiguous and subject only to the one reasonable construction that a contempt was intended."

The facts are undisputed that the petitioner, J. L. Tupy, distributed over 2,300 copies of the pamphlet in question in the State of Arkansas. Thus, the question arises whether the statement in the pamphlet "in our opinion the grand jury of March 6, 1961, was a set-up" is susceptible of different interpretations.

As we view the matter, this statement implies some fraudulent act connected with the Circuit Court in choosing jury commissioners and in choosing members of the grand jury.

It is obvious that this is what the petitioner intended when he refers further to the accompanying affidavit of March 17, 1961, "where Judge Murray selected the Grand Jury Commissioners on recommendation of Newton 'County Courthouse Officials' in defiance of the rule that creditable electors be consulted for that purpose, 'County Courthouse Officials' include persons whom we have asked to be indicted."

The petitioner primarily bases his argument for reversal and dismissal on *Bates* v. *State,* 210 Ark. 652, 197 S. W. 2d 45. That case must be and is hereby limited to its own particular facts and the situation there existing. It is not to be considered a precedent in future contempt cases. However, the controlling language even in that case is:

"Essence is that unless the writing precipitates a clear and present danger, in consequence of which justice will be affected, recourse of the aggrieved person is prosecution for libel."

But when considered in context, the statement made in the pamphlet by petitioner destroys public confidence in the courts and Grand Juries as such because the statement is to the *effect* that he cannot obtain justice in the court of Newton County for the reason of a rigged Grand Jury engineered by the Circuit Court which is "a seeming complot to white wash the accused". It follows, therefore, that these statements create a clear and present danger to the administration of justice. This being true, the judgment is affirmed except for the suspended sentence which is quashed. In contempt actions a suspension is within itself a remission. See *Stewart, et al,* v. *State,* 221 Ark. 496, 254 S. W. 2d 55.

GEORGE ROSE SMITH, J., concurs.

GEORGE ROSE SMITH, J., concurring. I am unable to join in that part of the majority opinion which in effect overrules *Bates* v. *State,* 210 Ark. 652, 197 S. W. 2d 45. In that case there had been a newspaper reference to a "hand-picked jury," but it was not implied, as it is here,

that the trial judge had taken part in the matter. The other allegations of contempt in the earlier case are not similar to the statements for which the appellant is being punished in the case at bar. Since there is no essential inconsistency between the *Bates* decision and today's holding I would defer any re-examination of the prior case until the issue is squarely presented.