GARNER AND ROSEN *v.* AMSLER, JUDGE.

5108                                                   377 S. W. 2d 872

Opinion delivered April 27, 1964.

*Tommy H. Russell* and *Edwin E. Dunaway,* for appellant.

*Bruce Bennett,* Attorney General, By *Jack L. Lessenberry,* Chief Asst. Atty. General, for appellee.

GEORGE ROSE SMITH, J. This is an application by the appellants, two lawyers living in Memphis, Tennessee, for a writ of certiorari to review a judgment finding them to be in contempt of the Pulaski Circuit Court. They contend that their conduct did not constitute contempt of court and, secondarily, that the punishment imposed is excessive.

These two attorneys, James O. Garner and Bernard M. Rosen, were representing the defendants in a civil action that had been set for trial on December 19, 1963. That morning they first filed a motion for a continuance, on the ground that they had been unable to employ local counsel until a few minutes before the trial was scheduled to begin. The court denied this motion, doubtless because it appeared that the petitioners had waited until the day before the trial before seeking to obtain local counsel.

Rosen then made an oral motion, out of the presence of the jury, to quash the entire panel of jurors. In presenting this motion he stated that on the day before Garner had been told, in a telephone conversation with someone in Little Rock, that the prospective jurors had "been stacked against the defendants" in the case about to be heard. Judge Amsler expressed his interest in the matter and asked if Mr. Garner would reveal the identity of his informant. The two lawyers declined to disclose the name of the person in question, though Rosen indicated that at some later time they would be ready to submit proof "with particulars, names and dates and times and places." Rosen requested that the court rule upon the motion solely on the basis of counsel's statements. The court denied the motion. After a request for a change of venue had also been denied the case proceeded to trial.

While the jury was deliberating Judge Amsler called Rosen and Garner before him and entered an order directing them to appear before the prosecuting attorney and reveal fully and completely all the information they had about the jury having been stacked. On January 3 the two lawyers duly appeared before the prosecuting attorney, but they still refused to reveal the name of their informant. When the prosecutor made his report to Judge Amsler the latter cited the two men for contempt of court.

In an effort to purge themselves of the charge of contempt Rosen and Garner disclosed the source of their information. Garner stated that on the day preceding the trial he had telephoned Wayne Owen, a Little Rock lawyer, in an effort to engage local counsel. Later in the day Owen called back and said that he had talked to Dale Price, another Little Rock lawyer, about assisting in the case, but Price declined "because he had been engaged in seeing that the jury was stacked against us."

Judge Amsler then sent for Owen and Price, whom we know to be men of good character. It developed at once that the assertion that the jury had been stacked

was wholly without foundation. Owen had not even talked to Price. He had discussed the matter with one of Price's partners. This lawyer, upon learning that Julius Acchione was representing the plaintiff in the principal case, said that Price would not be able to act for the defendants, because Acchione and Price had worked together in picking the jury. Owen understood this statement to mean that Acchione and Price had gone over the jury list to see who was on the jury (apparently as part of Acchione's preparation for the trial).

Before going to the courthouse on the morning of the trial Rosen and Garner asked Owen how juries are selected in Arkansas. Owen supplied the requested information. The Memphis lawyers, however, did not ask Owen for more details about the supposedly improper selection of the jury. Thus in moving that the panel be quashed they could at best have been relying upon Wayne Owen's statement of what Dale Price's partner had told him: "We can't participate, Wayne, because Acchione has been over here with Dale picking the jury."

At the conclusion of the hearing Judge Amsler adjudged both petitioners to be in contempt of court. He fined each one $250 and sentenced Rosen to ten days in jail and Garner to five days in jail. On the following afternoon, after the petitioners had been in the Pulaski county jail overnight, they were released on bond by an order of this court, in accordance with our practice in such cases.

We are unable to agree with the petitioners' insistence that their conduct was not contemptuous. In charging that the jury was "stacked" the petitioners obviously used the word in its card-playing sense: "To arrange cards secretly for cheating; hence, *Slang*, to have the odds fixed in advance." Webster's New International Dictionary (Second Edition). It was at the very least a charge that prospective jurors having a bias against the petitioners' clients had been deliberately selected for service in the case.

Our recent decision in *Tupy* v. *State,* 234 Ark. 821, 354 S. W. 2d 728, is pretty well in point. There the contemnor had distributed 2,300 copies of a pamphlet which referred to a ''Set-up Grand Jury,'' with an implication that the circuit judge had taken some part in the improper selection of that body. We affirmed a conviction for contempt, finding that ''the statement made in the pamphlet by petitioner destroys public confidence in the courts and Grand Juries.''

In the case at bar the petitioners' unrebutted assertion that the jury had been stacked against their clients could have weakened the public's confidence in the impartiality of the jury system and thus in the impartiality of the court itself. It is no answer to say that the declaration was made in chambers, in the course of a judicial proceeding. Had they reflected for but a moment these attorneys must unquestionably have realized that such a serious charge would inevitably be investigated in circumstances that would bring it to the attention of the public. They must be held responsible for the natural consequences of their action.

We have concluded, however, that the remaining portions of their jail sentences should be remitted. We may state at the outset that we think the two petitioners should be treated in the same manner. Rosen was the spokesman in the presentation of the motion to quash the panel, but the erroneous information originally came from Garner. Each seems to have concurred in and approved the other's conduct throughout the proceeding. There seems to be no sound basis for finding Rosen to have been more at fault than Garner.

These lawyers were undoubtedly careless in making such an accusation without having carefully verified their facts. They showed the worst possible judgment in presenting their motion without supporting proof and in refusing to reveal the source of their misinformation. But a sentence for contempt is not intended primarily as a means of punishing one for carelessness or bad judgment. Its principal justification lies rather in the

need for upholding public confidence in the majesty of the law and in the integrity of the judicial system. When we have found that these ends will be met despite a reduction or even a remission of a jail sentence for contempt it has been our practice to modify the judgment. See *Lockett* v. *State,* 145 Ark. 415, 224 S. W. 952; *Baker* v. *State,* 177 Ark. 13, 5 S. W. 2d 337; *Pace* v. *State,* 177 Ark. 512, 7 S. W. 2d 29.

The petitioners have served what amounts in law to two days in jail. That puishment was deserved. But the allegation of jury stacking has been demonstrated to be so wholly without foundation that it is not possible to think that the standing of the Pulaski Circuit Court in the minds of the public has been impaired in the slightest degree. We are not convinced that ''the ends of justice,'' as we said in *Pace* v. *State, supra,* require that these out-of-state attorneys be again confined to jail for conduct that does not appear to have been motivated by bad faith or malice.

As thus modified the judgment is sustained.