Jimmy P. KIMMONS *v.* Carol L. KIMMONS

CA 80-426                                         613 S.W. 2d 110

Court of Appeals of Arkansas
Opinion delivered March 18, 1981

*Charles R. Garner*, by: *Gary D. Person*, for appellant.

No brief for appellee.

TOM GLAZE, Judge. This is an appeal by the appellant father from an order entered on June 16, 1980, wherein the Chancery Court, on its own motion and without a hearing, awarded permanent custody to the appellee mother. Earlier on May 8, 1980, the court had granted the appellant an absolute divorce and also awarded him temporary custody of the parties' minor child. At the end of the May 8 trial, the Chancellor found that the appellee's situation was not conducive for her to have custody of the child, but the Chancellor ordered Arkansas Social Services to continue supervising the parties and directed the agency to make a further report. The next and only action taken by the Chancellor, as reflected by the record before us, was his signing and entering of the June 16 order awarding custody to the appellee. The terms of this order do not indicate a hearing was held or that any evidence was properly before the court when the order was entered. The order does reflect, however, that the Chancellor found that the appellee had

rehabilitated herself, that her rehabilitation was verified by Social Services in its report to the court and that the report was made available to counsel for the parties.

On appeal, the appellant first contends the Chancellor erred in entering the June 16 order without a hearing. We agree. The appellant cites the case of *Weatherton v. Taylor*, 124 Ark. 579, 187 S.W. 2d 450 (1916), which we believe is decisive of this issue. In *Weatherton*, the Supreme Court considered the same legal issue which is before us and, in disposing of the issue, stated:

> While chancery courts possess a continuing power over the matter of custody of a child which has been awarded to one of the parents, *it does not follow that an order changing the status can be made without proof show-ing a change in circumstances from those which existed at the time the original order was made. The original decree constituted a final adjudication that appellant, and not appellee, was the proper one to have the child, and before an order can be made changing the status there must be proof on the subject justifying the change.* [Emphasis supplied.]

Since the court's decision in *Weatherton* in 1916, the Supreme Court has recognized parents' custodial rights as fundamental rights protected by the due process clause of the federal and state constitutions. *Carroll v. Johnson*, 263 Ark. 280, 565 S.W. 2d 10, 16 (1978) and *Davis v. Smith*, 266 Ark. 112, 583 S.W. 2d 37 (1979). The appellant was without doubt entitled to a hearing before the Chancellor entered any order modifying the May 8 order, changing custody of the parties' child from the appellant to the appellee.

The appellant raises a second issue, contending that a finding made by the Chancellor was erroneous. In this regard, although the Chancellor on May 8 temporarily awarded custody to the appellant, the Chancellor also stated:

> It's my opinion that your (Appellee) present circum-stances are not suitable for having custody of the child *but you are the mother and under the circumstances of*

*the case, you should be entitled to custody* of the child if you rehabilitate yourself and get your home and circumstances in order. [Emphasis supplied.]

The appellant argues that the Chancellor evidently considered the tender years doctrine as the controlling factor in this case, and since the parties' child was only one and one-half years old, he awarded custody to the appellee mother. Of course, no hearing was held after the Chancellor made his remarks on May 8, and no findings or conclusions were a part of the June 16 order which would indicate that he changed custody premised on the tender years doctrine. This being true, we decline to decide on the record before us that the Chancellor applied the doctrine to the facts at bar.

Our courts have long recognized the doctrine and accordingly have been reluctant to deprive a child of tender years of the care and affection of his mother when other things between the mother and father are considered equal. *Self* v. *Self*, 222 Ark. 82, 257 S.W. 2d 281 (1953) and *DeCroo* v. *DeCroo*, 266 Ark. 275, 583 S.W. 2d 80 (1979). However, our 1979 Arkansas General Assembly enacted Act 278, compiled as Ark. Stat. Ann. § 34-2726 (Supp. 1979) which in effect provides that in divorce actions custody of children must be awarded without regard to the sex of the parent. Since there is nothing in the record to show that the Chancellor did or did not consider §34-2726, we are in no position to decide that he did not. Since this case and the issue of custody have not been fully developed in the trial below, this cause must be remanded so that the parties' rights can be clearly determined. See *Arkansas National Bank* v. *Cleburne County Bank*, 258 Ark. 329, 525 S.W. 2d 82 (1975). When this case is fully heard by and presented to the Chancellor, the parties will have the opportunity to properly raise the issue regarding the tender years doctrine if the evidence warrants.

In the instant case, the Chancellor, we believe wisely, continued jurisdiction over the parties with the specific directions that Social Services further supervise the parties and report further to the court. At the May 8 trial, serious allegations and evidence were presented that the appellee mother had failed to properly care for the parties' minor

child. The child, Jennifer, suffered from diaper rash to the point of bleeding; she had infected ears which required the surgical placement of tubes in her ears; and she had not been given her immunization shots. During the fourteen month period between the parties' separation and the May 8 trial, the appellee resided with Jennifer at five different residences and admittedly lived at two of these residences with a man.

Appellant's situation also presents some obstacles to his personally caring for Jennifer. Although he apparently has adequately provided support for Jennifer since he has had physical possession of her, he has had to rely on his sister to provide the necessary care and nurturing Jennifer requires. It was appellant's sister who actually saw that Jennifer received needed medical treatment and who has provided shelter for her. The sister has intervened in the case below seeking custody of Jennifer.

Under the circumstances described, we recommend to the Chancellor that he give serious consideration to the appointment of a guardian *ad litem* for Jennifer to represent her in the future custody proceedings before the trial court. The procedure of appointing a guardian *ad litem* to represent a child's interest in custody litigation has been adopted in many jurisdictions. *Wendland* v. *Wendland*, 29 Wis. 2d 145, 138 N.W. 2d 185 (1965); *Veazey* v. *Veazey*, 560 P. 2d 382 (Alaska 1977); *Paschall* v. *Paschall*, 21 N.C. App. 120, 203 S.E. 2d 337 (1974); and *In re Adoption of Children*, 96 N.J. Super. 415, 233 A. 2d 188 (1967). See also, Podell, *The "Why" Behind Appointing Guardians Ad Litem for Children in Divorce Proceedings*, 57 Marq. L. Rev. 103 (1973). By virtue of their inherent powers, courts have appointed guardians *ad litem* in custody cases where the evidence is either nonexistent or inadequate to determine the comparative fitness of the parents and to determine where the best interests of the child lie, or in cases where it is apparent that the dispute is centered on the desires of the parents rather than the best interests of the child. *Koslowsky* v. *Koslowsky*, 41 Wis. 2d 275, 163 N.W. 2d 632 (1969).

The case at bar presents a classic example in which the child's welfare and interest should not solely depend upon the parents' attempts to justify why they should be awarded

custody. The court should not be limited to the often biased and distorted picture which can be depicted by evidence strategically introduced or not introduced by the mother and father in a hotly contested custody fight. The negative facts before us as developed by the parties at trial primarily reflect why neither the appellant nor the appellee should have custody. Of course, this adverse information is important to the court, but such a record does not necessarily offer evidence upon which the court may act to serve the child's best interests. The assistance of Social Services can serve to provide other, more positive information to the court, but this agency cannot legally represent the child in preparation for or at the trial to ensure that all the relevant information its investigation may reveal is properly introduced. Moreover, Social Services is at times appointed by the court as a guardian for the parents' child in instances where a Chancellor is unsure that either parent should be awarded custody. With this potential conflict, Social Services is unable to actively represent the child in a custody case between parents when the possibility exists that evidence could develop which may require the appointment of Social Services as custodian.

As established in *Wendland, supra*, a guardian *ad litem* if appointed should be allowed an adequate opportunity to investigate the case, should be permitted to call his witnesses at trial and to cross examine those witnesses called by the parties. In short, he should be permitted to represent his child client as he would any client in preparation for and at trial. The expense of the guardian would, of course, be imposed on the parents, but this additional expense will prove rewarding when the interests of children are better served. Children are not mere chattels in a custody fight, but rather are to be treated as interested and affected parties whose welfare should be the prime concern of the court in its custody determinations.

For the reasons stated herein, we reverse and remand this cause, directing that the order entered by the trial court on June 16, 1980, be vacated and that any future custody proceedings be held consistent with this court's opinion.

Reversed and remanded.