Jennifer LINDER (Johnson)  *v.*
Honorable Timothy W. WEAVER

05-1080                                     219 S.W.3d 151

Supreme Court of Arkansas
Opinion delivered December 5, 2005

*The Law Offices of Ables, Howe & Standridge*, by: *Lisa Jones-Ables* and *J. Brent Standridge*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Scott P. Richardson*, Ass't Att'y Gen., for appellee.

PER CURIAM. This litigation stems from the parties' divorce rendered on December 23, 1998. From the record now before us, it appears the parties, Jennifer Linder and Deron Johnson, have been litigating custody, visitation, and child-support issues ever since their divorce. Deron complains that Jennifer has regularly violated his visitation rights, and those problems have increased since Jennifer re-married and moved to Cabot.

Commencing in January 2000, the court's docket shows these two parties have been exchanging serious charges and counter-charges against each other by motions and petitions. The parties' actions resulted in Deron's requesting custody of the parties' children — Keith and Sky, now ages 14 and 12 — and in Jennifer's seeking child-support arrearages from Deron. These issues and others were addressed in a six-day trial, which began on Monday, September 19, 2005, and ended on Saturday, September 24, 2005. The trial judge placed custody of the children with Deron and allowed him to pay his back-child support to purge himself of civil contempt. Furthermore, the judge found Jennifer in contempt of court and sentenced her to one year in the Cleburne County Detention Center. Jennifer was taken immediately to the detention center, where she is currently serving her sentence.

Subsequent to Jennifer's initial incarceration, the trial judge filed an amended order in an attempt to reduce Jennifer's sentence from one year to six months. In addition, the amended order included the following new language:

> Plaintiff may petition the Court for release before six months if she can demonstrate that she will abide by the Court's orders, that she recognizes that what she has done is wrong, and that she will undergo counseling or obtain some help for her actions.

Jennifer has filed a petition with our court for a writ of certiorari, contending the judge's original order is illegal and has violated her constitutional rights. At this stage of the proceeding, we address only the merits of whether Jennifer is entitled to her requested writ. We hold she is.[1]

First, we note that, before a record was filed with the clerk of this court, we declined to issue a temporary stay pending our decision on the merits of Jennifer's petition for writ of certiorari. *See Linder v. Weaver*, 364 Ark. 55, 216 S.W.3d 130 (2005) (Glaze, J. dissenting) and *Linder v. Timothy W. Weaver*, 364 Ark. 267, 216 S.W.3d 130 (2005) (Glaze, Corbin and Imber, JJ. dissenting). Following the lodging of a record, we now grant Jennifer's petition for the reasons set out below.

---

[1] The merits of the custody, visitation, and other related matters decided at the six-day trial can be addressed and decided on appeal.

We initially reject Deron's and the trial judge's contention that Jennifer is in civil contempt, not criminal contempt, and that she is therefore not entitled to a writ of certiorari. They are wrong; certiorari is available in the exercise of superintending control over a tribunal which is proceeding illegally *where no other mode of review has been provided. Bates v. McNeil*, 318 Ark. 764, 888 S.W.2d 642 (1994) (emphasis added). This court more recently announced the following rule:

> Certiorari proceedings are governed by the normal appellate rules unless the normal appellate review process would be useless, such as when the contemnor has to remain in jail during the course of the appeal.

*Ivy v. Keith*, 351 Ark. 269, 280, 92 S.W.3d 671, 678 (2002).

In this case, it is clear Jennifer had no available remedy by appeal when she was found in contempt and promptly placed in jail. No record was immediately available for her to lodge an appeal. As a result, the remedy of direct appeal would be useless because the contemnor would continue to be incarcerated. *See Ivy v. Keith, supra.* In other words, Jennifer has correctly challenged the judge's unlawful sentence by her request for a writ of certiorari.

Second, we address the State's contention that Jennifer was not entitled to a jury trial because the trial judge's amended order reduced her sentence to six months. The State's argument must fail because the trial judge lacked the authority to amend his original order. Arkansas Code Annotated § 16-90-103 (1997) provides as follows:

> All sentences made, rendered, or pronounced by any of the courts of the state against anyone *without actual or constructive notice*, and all proceedings had under such sentences, *shall be absolutely null and void.*

(Emphasis added.)

Here, the trial judge did not notify either party before amending his original order and imposing a six-month sentence on Jennifer. As a result, according to section 16-90-103, the amended order is null and void.

This leaves the sole issue of whether the original order is constitutional. The trial judge's original order held Jennifer in criminal contempt by punishing her with a year in jail for her

alleged failure to follow court orders. Our court in *Etoch v. State*, 343 Ark. 361, 37 S.W.3d 186 (2001), held the following:

> [T]he better practice in cases of criminal contempt is for the trial judge to announce at the outset whether punishment in excess of six months may be imposed. If the judge does not contemplate the imposition of a greater sentence, a jury is not necessary; otherwise one may be demanded. [citation ommitted] Stated in other words, under Arkansas law there is no right to a jury trial in a prosecution for criminal contempt unless the sentence actually imposed upon the contemnor is greater than six months, a sentence greater than six months is authorized by statute, or the trial court announces prior to trial that it is contemplating a sentence greater than six months in the particular case. Under any of these circumstances, the offense can no longer be considered "petty" because the contemplated sentence exceeds six months' imprisonment. *See Medlock v. State*, 328 Ark. 229, 942 S.W.2d 861 (1997).

The State argues that Jennifer has waived her right to a jury trial by not requesting one prior to the contempt proceeding. The State's argument fails because Jennifer was never put on proper notice — as set out in *Etoch* — that she was entitled to a jury trial. Under the circumstances, it was completely unreasonable to expect Jennifer to request a jury trial because the trial judge never "announced that [he] was contemplating a sentence greater than six months." *See Etoch v. State, supra.* Furthermore, we held in *Winkle v. State*, 310 Ark. 713, 841 S.W.2d 589 (1992), that the right to a jury trial shall not be violated unless the right is waived in the manner provided by law. *See also* Ark. R. Crim. P. 31.2 and 31.3 (2005).

■ We grant Jennifer's petition for writ of certiorari and direct that Jennifer be released from the detention center, so she can proceed consistent with this opinion.[2]

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. I applaud the majority for reaching the just and proper conclusion in this case — i.e.,

---

[2] Under the facts and circumstances of this case, it would appear that the appointment of an attorney ad litem to represent the children's interest might be a benefit to all involved in this ongoing controversy. *Kimmons v. Kimmons*, 1 Ark. App. 63, 613 S.W.2d 110 (1981); Ark. Code Ann. § 9-13-101(d)(1) (2005) (attorney ad litem program to represent children in custody litigation established); Act 2096 of 2005 (attorney ad litem program funded).

that Jennifer is entitled to a writ of certiorari. This court has recognized that the principal justification for contempt lies in the need for upholding public confidence in the majesty of the law and in the integrity of the judicial system; when we have found these ends will be met despite a reduction or even a remission of a jail sentence for contempt, it has been our practice to modify the judgment. *See Arkansas Dep't of Human Servs. v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998); *Carle v. Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993) (citing *Garner & Rosen v. Amsler*, 238 Ark. 34, 377 S.W.2d 872 (1964)); *see also Page v. State*, 266 Ark. 398, 583 S.W.2d 70 (1979); *Dennison v. Mobley*, 257 Ark. 216, 515 S.W.2d 215 (1974). Given the circumstances of this case, the trial court's attempt to reduce Jennifer's sentence from one year to six months — albeit by a void amended order — shows that he recognized that the sentence should be reduced. Because our court has the authority to modify the lower court's sentence to meet the ends of justice, this court should remit Jennifer's jail sentence to time already served.

I also write separately to state my disappointment that our court refuses to suggest to the trial court the employment of an attorney ad litem in this case. This is precisely the type of custody battle the General Assembly envisioned when that body created and funded Arkansas's attorney ad litem program. Frankly, I believe it to be an abuse of this court's discretion to *not* recommend the appointment of an attorney ad litem.

In *Kimmons v. Kimmons*, 1 Ark. App. 63, 613 S.W.2d 110 (1981), the court of appeals emphasized that an attorney ad litem may be appointed to represent the children's interest in custody litigation. The *Kimmons* court stated as follows:

> By virtue of their inherent powers, courts have appointed guardians ad litem in custody cases where the evidence is either nonexistent or inadequate to determine the comparative fitness of the parents and to determine where the best interests of the child lie, or in cases where it is apparent that the dispute is centered on the desires of the parents rather than the best interests of the child. *Koslowsky v. Koslowsky*, 41 Wis.2d 275, 163 N.W.2d 632 (1969).
>
> The case at bar presents a classic example in which the child's welfare and interest should not solely depend upon the parents' attempts to justify why they should be awarded custody. The court should not be limited to the often biased and distorted picture

which can be depicted by evidence strategically introduced or not introduced by the mother and father in a hotly contested custody fight.

*Kimmons*, 1 Ark. App. at 68, 613 S.W.2d at 113. Since the *Kimmons* decision, the General Assembly has enacted Ark. Code Ann. § 9-13-101(d)(1) (Supp. 2005), which authorizes the Director of the Administrative Office of the Courts to establish an attorney ad litem program to represent children in circuit courts in cases where custody is an issue. That program had been established and funded under Act 2096 of 2005. Under the facts and circumstances of this case, it would appear that an attorney ad litem would be of great benefit to all in this ongoing controversy. I would recommend that the trial judge — whoever it may be that presides over this custody matter — consider making such an appointment.