Cite as 2026 Ark. App. 198

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-24-272

| | |
|---|---|
| TRENTON SIMSHAUSER<br><br>APPELLANT<br><br>V.<br><br>MICHELLE SIMSHAUSER<br><br>APPELLEE | Opinion Delivered April 1, 2026<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26DR-23-697]<br><br>HONORABLE CECILIA DYER, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Trenton Simshauser ("Trent") appeals from the Garland County Circuit Court's order granting appellee Michelle Simshauser's petition for an order of protection and motion for contempt. Trent argues that the trial court erred in granting an order of protection because there is insufficient evidence of domestic abuse and that the trial court erred in granting Michelle's motion for contempt. Specifically, with respect to the latter, Trent asserts that he was wrongly denied a trial by jury for criminal contempt and that there is insufficient evidence that he was guilty of civil or criminal contempt because of the lack of clarity in the standing order that he allegedly violated. We affirm.

## I. *Background*

The parties married in January 2021, and Michelle filed for divorce on September 12, 2023. The judge signed a standing order, which provided the following in relevant part:

5. Neither party shall threaten, injure, molest or harass the other party or any of the minor or adult child/ren of the parties.

6. Neither party shall spend or dispose of any monetary assets (money) except for normal/routine living expenses or normal/routine business expenses and neither party shall cancel health insurance, automobile insurance, or other casualty or property damage insurance, cell phones, utilities, or other necessities of life without order of the Court or written agreement between the parties filed with the Court.

7. There shall be no cash withdrawals from any marital account in excess of one hundred dollars ($100.00) per day or transfer funds held on deposit in any marital account without order of the Court or written agreement of the parties filed with the Court.

On October 31, Michelle filed a motion for contempt alleging that Trent had violated paragraphs 5, 6, and 7 of the standing order. Specifically, she alleged that Trent had called her cell phone approximately thirty-six times in an eight-hour period; that he had made fourteen Facebook audio calls to her in a day; that he texts her minor children and family members when she does not answer his calls; that he screams into the Ring doorbell camera and through the Amazon Alexa device at the marital home when she does not answer his calls; that he has access to her phone and social media and contacts people with whom she communicates; that he threatens to report her (a nurse) to the Arkansas Board of Nursing for verbally and mentally abusing him—a disabled veteran and sexual-assault survivor; that he copied her on an email to the Arkansas Inspector General in which he stated that she had committed identity theft and fraud; that he harasses and humiliates her by posting on social media; that he calls and screams at her, calls her a liar, and threatens to not pay the mortgage, to disconnect the utilities, and to cancel the car insurance; that on October 26, 2023, he

canceled the internet and streaming services to the marital home; that he threatened to cancel her Verizon account and to change passwords to bank accounts; and that he transferred $3,500 from the parties' joint bank account to his personal bank account the week of October 23.

Also, on October 31, Michelle filed a petition for an order of protection. She attached an affidavit to her petition requesting that the order cover herself; her two teenage daughters; and her mother, Sherry Harris. Michelle attested that Trent had been going through extreme mood swings and described how on the way to therapy he had yelled at her, called her a liar, and said that she had ruined his life and that he hated her. Michelle asserted that Trent has posttraumatic stress disorder, major depression, and anxiety and is being treated for bipolar disorder; that he is a disabled veteran; that he has extreme yelling fits and berates her in front of her children; that he has been "so scary" that she has taken her children and stayed with her mother; that he had an "episode" in February 2023, which was so bad that she called 911 to intervene; that he was in a VA psych ward in July 2023 for suicidal ideation; that he came to the marital home and yelled and screamed so much that Harris came over because she thought that Trent would hurt her (Michelle); and that he was supposed to enter long-term care in Oregon, where he had moved to be near his family, but chose not to be admitted.

Michelle further attested that Trent had become angrier and more threatening since she filed for divorce. She alleged that within the last two weeks, Trent threatened to return to Arkansas to beat up her male friends, saying that he could kill someone and get away with

it because of his diagnoses and that he could kill someone, go to prison, and be "just fine." Michelle attested, "Due to this increased anger, and inability to stay calm, I am very scared that he will show up at the house to kill me or harm my minor children and other family members." Michelle then repeated many of the allegations from her motion for contempt. She asserted that Trent was in the military and has access to firearms. Michelle concluded "[t]hat due to his threats, behavior, [and] mental instability, I am in fear of immediate bodily harm to myself, my minor children, and my mother."

On November 8, the trial court entered an ex parte order. At a hearing on December 11, Michelle testified to the allegations in her motion and petition and added the following: Michelle testified that Trent had threatened her, her daughters, and her mother and had "stalked" her through the Ring doorbell camera; that she does not answer Trent's phone calls because she is scared of him; that Trent has a lot of firearms but is obsessed with knives; that Trent disconnected the internet to the marital home and that she needs internet for her job and that her daughters need it to do their homework; that Trent had lunged at her and would throw things; that Trent had also lunged at her mother and one of her daughters; that Trent "rages" and curses at her while standing over her; that Trent would come within inches of her face to yell at her; that, after she had looked at his phone and discovered that Trent was having an affair, he chased her out onto the street to get his phone; and that he had threatened to return to Arkansas and "to kill people if they were with [her,] and he was gonna stab people, um, just scary—just scary mad."

4

Michelle said that Trent had not lived in the marital home since July 4, 2023. She said that the parties had a joint marital account from which household bills were paid. She testified that her affidavit contained a typo in that she had alleged that Trent had withdrawn $3,500 but said that he had withdrawn $350, leaving forty-six cents in the joint marital account. Michelle agreed that she had transferred $3,500 from Trent's personal bank account into her account in order to pay the mortgage and utilities.

Harris testified that she had to call 911 because Trent was mad at her for telling Michelle to be careful—he warned her that Michelle was his family and that he might show up at Harris's home. Harris told police that she thought Trent would come to her home and hurt her. She said that she declined law enforcement's offer to speak with him, thinking it would only make it worse. Harris agreed that Trent had indeed lunged at her, Michelle, and Michelle's daughters. She said, "I'm worried for my family. I'm not worried that he's going to hit [Michelle]. Because of all the suicide attempts, I'm worried he's going to go postal. I'm not worried about him slapping or pushing [Michelle] down. I'm worried about much more serious when he's out of control 'cause he can't handle--"

Following the hearing, the trial court entered an order on January 19, 2024, granting Michelle's petition for an order of protection after finding that Michelle, her two children, and Harris were in immediate and present danger of domestic abuse. The trial court found that Trent presented a credible threat to them and entered the order of protection for a term of ten years. The trial court also granted Michelle's motion for contempt. The trial court found that Trent was in willful contempt for violating paragraph 5 of the standing order due

5

to threats he had made to Michelle; paragraph 6 for shutting off the internet utility to the marital home; and paragraph 7 for transferring funds out of the joint marital account. The trial court sentenced Trent to forty-eight hours in the Garland County Detention Center but suspended the sentence contingent on Trent's compliance with all prior and future orders of the court until the final disposition of the case.

## II. *Discussion*

### A. Order of Protection

Arkansas Code Annotated section 9-15-201(e)(1)(A) (Repl. 2020) provides that a petition for an order of protection shall allege the existence of domestic abuse. "Domestic abuse" means physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members. Ark. Code Ann. § 9-15-103(4)(A) (Supp. 2025). The petition shall also be accompanied by an affidavit made under oath that states the specific facts and circumstances of the domestic abuse and the specific relief sought. Ark. Code Ann. § 9-15-201(e)(2). At a hearing on the petition, upon a finding of domestic abuse, the court may provide various forms of relief in the order of protection. Ark. Code Ann. § 9-15-205(a) (Repl. 2020). Any relief granted shall be for a fixed period of time not less than ninety days nor more than ten years in duration, in the discretion of the court, and may be renewed at a subsequent hearing upon proof and a finding by the court that the threat of domestic abuse still exists. Ark. Code Ann. § 9-15-205(b).

The standard of review after an order of protection is granted is whether the trial court's findings are clearly erroneous. *Morales v. Morales*, 2023 Ark. App. 582, 680 S.W.3d 765. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Disputed facts and determinations of the credibility of the witnesses are within the province of the fact-finder. *Id.*

Trent argues that Michelle presented no proof of injury to her, her children, or Harris and presented no evidence of medical or psychological treatment received by any of them. Trent argues that Michelle's allegations did not constitute a violation of the Domestic Abuse Act, which must be strictly construed. He asserts that domestic abuse does not include "yelling in person or at a doorbell," sending text messages, or making unsuccessful phone calls.

Trent's argument focuses on the lack of physical injury and does not acknowledge that domestic abuse includes the infliction of *fear* of imminent harm—even without any physical injury. Michelle testified that Trent had threatened to kill those around her and that his instability and increasing rage left her thinking that he would show up at the marital home and harm her, her daughters, and Harris. Michelle said that Trent had lunged at her, her daughters, and Harris. Harris testified that she was afraid that Trent was going to "go postal" on Michelle and that she was afraid that he would come to her home and hurt her. We cannot say that the trial court, given all of the circumstances, clearly erred in finding that Trent had committed domestic abuse sufficient to warrant entry of an order of protection.

B. Finding of Contempt

When a sentence for contempt is suspended conditionally for a specific period of time, the suspension is a mere postponement of the contempt, rather than a remission. *Henry v. Eberhard*, 309 Ark. 336, 832 S.W.2d 467 (1992). The trial court said that Trent's sentence was suspended conditionally, depending on his compliance with prior and future court orders "until the final disposition of this case." We hold that the contempt issue here has been postponed and is, therefore, not moot.

First, Trent asserts that the trial court found him in criminal contempt because his sentence of incarceration was to punish him, and he argues that the trial court erred in denying him a trial by jury. Contempt can be civil or criminal. *Judkins v. Judkins*, 2025 Ark. App. 524. The purpose of criminal contempt is to preserve power, vindicate the dignity of the court, and punish for disobedience of the court's order. *Id.* By comparison, civil-contempt proceedings are instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders made for the benefit of those parties. *Id.*

In determining whether a particular action by a judge constitutes criminal or civil contempt, the focus is on the character of relief rather than the nature of the proceeding. *Wilson v. Kolterman ex rel. Kolterman*, 2024 Ark. App. 376, 692 S.W.3d 380. Because civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by complying with the order. *Id.* This is the source of the familiar saying that civil contemnors "carry the keys of their prison in their own pockets." *Id.* at 15, 692 S.W.3d at 390 (quoting *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, at 448,

156 S.W.3d 228, 234 (2004)). Criminal contempt, by contrast, carries an unconditional penalty, and the contempt cannot be purged. *Id.*

Trent's penalty of incarceration was conditioned on his compliance with prior and future court orders. Also, the purpose of the sanction was to coerce him into obeying the court's orders. A trial court may use imprisonment as punishment for civil contempt. *Potter v. Holmes*, 2020 Ark. App. 391, 609 S.W.3d 422. Trent has made no argument that he is entitled to a jury trial for civil contempt. Even if this matter involved criminal contempt, there is no right to a jury trial in a prosecution for criminal contempt unless the sentence actually imposed upon the contemnor is greater than six months. *Linder v. Weaver*, 364 Ark. 319, 219 S.W.3d 151 (2005). Here, Trent's sentence of only forty-eight hours was suspended, not imposed.

Second, Trent contends that he was not guilty of civil or criminal contempt because the standing order was not sufficiently clear. Willful disobedience of a valid order of a court is contemptuous behavior; however, before one can be held in contempt for violating the court's order, the order must be definite in its terms and clear as to what duties it imposes. *Judkins*, *supra*. Trent, however, made no argument below that the trial court's standing order was not sufficiently clear as to what conduct was prohibited. It is axiomatic that this court will not consider arguments raised for the first time on appeal, and a party is bound by the scope and nature of the arguments made at trial. *Knesek v. Knesek*, 2023 Ark. App. 151, 662 S.W.3d 231. Trent challenges the sufficiency of each of the trial court's findings on his violations of the standing order. With respect to paragraph 7, Trent argues only that he

9

transferred $350 from a joint account to which he had access and maintains that he was not attempting to harm Michelle by doing so. He asserts that, in any event, Michelle withdrew $3,500 from his account. Paragraph 7 clearly forbids either party from withdrawing more than $100 cash per day from the parties' marital account without prior court intervention. Trent's "defense"—that it was a joint account, that he had no ill will, and that Michelle withdrew ten times what he had withdrawn—is no excuse for disobeying the trial court's standing order and amounts to contemptuous behavior. Because this violation is sufficient to support the trial court's finding of contempt, we need not address Trent's arguments as to the other violations. *See Scudder v. Ramsey*, 2013 Ark. 115, 426 S.W.3d 427.

Affirmed.

HARRISON and BARRETT, JJ., agree.

*Robert S. Tschiemer*, for appellant.

*LaPorte-Jenner Law, PLLC*, by: *Frank LaPorte-Jenner* and *Kelli LaPorte-Jenner*, for appellee.