# OMNI HOLDING AND DEVELOPMENT CORPORATION and Tom Papachristou *v.* 3D.S.A., INC.

03–841 156 S.W.3d 228

Supreme Court of Arkansas
Opinion delivered March 25, 2004

*Lyons, Emerson & Cone, P.L.C.*, by: *Scott Emerson*, for appellant Omni Holding and Development Corporation.

*Fogleman & Rogers*, by: *Joe M. Rogers*, for appellee.

ROBERT L. BROWN, Justice. Appellant Omni Holding and Development Corporation (Omni) appeals from an order, finding it to be in civil contempt for refusing to deliver to appellee

3D.S.A., Inc. (3D), all of the aviation property it was ordered to deliver by the circuit court. The circuit court further found Omni's "managing officer," Tom Papachristou, in criminal contempt for personally directing Omni employees to switch data plates on several planes and for intentionally refusing to deliver certain items in the order of delivery in an assembled manner. The circuit court fined Omni $75,000, to be payable to 3D, and sentenced Papachristou to sixty days' imprisonment. Omni raises four points on appeal: (1) that the circuit court erred in finding it in civil contempt and Papachristou in criminal contempt; (2) that the circuit court erred in awarding 3D possession of a plane which was the property of another person not made a party to the action; (3) that Arkansas Code Annotated § 18-60-819 (Repl. 2003), is unconstitutional as applied to the facts of this case; and (4) that the circuit court erred in admitting certain FAA reports into evidence because they were hearsay. We affirm the contempt order of the circuit court as modified.

On January 23, 2003, 3D filed a replevin action against Omni. The complaint asserted that under an aircraft and equipment lease agreement which expired on December 31, 2002, 3D had leased nine separate aircraft, logbooks, spraying equipment, and spare parts to Omni. 3D alleged that it had demanded the return of its property, both orally and in writing, but Omni had refused to return the property. 3D further asserted that the value of the nine aircraft totaled $610,000, and that it was entitled to the sum of $25,000 for wrongful detention of its property.

Omni answered 3D's complaint and denied that 3D had a superior right to possession of the planes and other items. Omni admitted that the aircraft were leased to it by 3D but claimed the lease had been renewed. It further admitted that it refused to return the aircraft, because it had expended great time and expense in preparing the planes for its participation in the Boll Weevil Eradication Program in the upcoming season. A hearing was held by the circuit court, at the conclusion of which, the court ruled:

> The Court will order immediate possession of the 9 aircraft identified by the contract to . . . 3D SA Corporation, now an Arkansas corporation, according to the proof. And they're to be delivered along with all log books and parts and equipment that is associated with each aircraft.
>
> . . . .
>
> I'm ordering [these 9 airplanes] returned to the registered owner. In fact that's not even in dispute — the right to possess on

the part of Omni is based upon the lease. The lease expired December the 31st. Your argument that the clause that required some vague notice that would extend the contract, I don't buy. I do buy your argument — and will hear that at a later time — that you may be damaged as a result of that, that there might be a breach of one of the terms of the contract and under that breach, you sustained damages. I'm not hearing the issue of damages today.

. . . .

[With respect to two planes which may have had their data plates swapped,] I'll order that the two aircraft in question are not to be disturbed, modified, altered, or in any way delivered to third parties until such time as proper authorities can identify the rightful aircraft.

On February 10, 2003, the circuit court entered its order of delivery and directed the sheriff to take possession of the property at issue and deliver it to 3D. It further directed Omni to aid and assist the sheriff in this and expressly ordered Omni not to interfere with delivery of the property. The court set a bond in the amount of $1,120,000 to enable Omni to obtain redelivery of the property. The court also ordered that two Cessna airplanes, N-9091F, and N-19236G, be impounded and held by the sheriff for the sheriff and 3D to determine which of the two planes was 3D's property.

On February 20, 2003, 3D filed a petition for contempt in the circuit court, alleging that 3D had continuously sought delivery of the property set forth in the order of delivery, but that Omni had failed to comply with that order. In particular, the petition asserted that Omni: (1) failed to aid and assist in effecting delivery by delaying delivery of some of the property; (2) failed to provide access to all of Omni's premises; (3) interfered with the Sheriff and 3D in effecting delivery; and (4) removed, altered, destroyed, or substituted certain property or parts. The petition added that Omni had failed to deliver certain log books, failed to deliver or account for certain engines and propellers, and had delivered certain unidentifiable engine parts. 3D requested that Omni and its president, Kim Crockett, and its general manager, Papachristou, be ordered to appear and show cause why they should not be held in contempt.

A show-cause hearing was ordered by the court, and on April 10, 2003, the contempt hearing commenced.[1] Testimony was taken and at the conclusion of the hearing, the court ruled:

> From the evidence I've heard, I have no difficulty at all in finding that Omni Corporation made — is in contempt of Court — and made a direct effort to conceal property that the corporation or its agents, officers, or employees knew or had reason to believe was the property of 3D Corporation subject to a lease and that they made deliberate efforts to conceal the identity of that property and to return to 3D property other than the property covered by the lease, which was owned by 3D.
>
> I'm specifically finding that Omni Corporation — the corporation itself — is in civil contempt.
>
> I'm also specifically finding that Tom Papachristou was the managing officer or employee of Omni Corporation, that he had the duties and responsibilities to conduct the day-to-day activities of the business with regard to maintaining and flying and contracting the aircraft.
>
> I'm finding specifically that he personally directed employees or agents to remove the data plates from two aircraft, to swap engine parts, and I'm finding him in criminal contempt and am going to sentence him to 60 days in the county jail.
>
> . . . .
>
> I'm persuaded somewhat by the argument that has been made that the money award, if any, should be perhaps reserved for an argument to the jury. On the other hand, I feel that a money award against the corporation is appropriate, and I'm going to allow a $75,000 civil contempt judgment in the way of civil damages for willful violation of the Court's Order.
>
> . . . .
>
> Mr. Papachristou can extricate himself from the criminal contempt by immediate compliance with the previous Order of the

---

[1] Prior to the hearing, Omni made an unsuccessful attempt to have the matter removed to federal court. The federal district court remanded the matter back to state court on April 9, 2003.

Court. That would include delivery of all of the parts and equipment, the GPS's, radios, spray equipment, and the other attachments belonging to the leased property at the time he received it and in working condition. Short of that, he'll serve the 60 days in jail.

. . . .

Yeah, I think to make 3D whole will be a part of that. In order to purge himself of contempt, he'll have to make 3D whole to the extent of that civil judgment and the return of the other items.

An order memorializing the court's ruling on contempt was entered on May 19, 2003. In that order, the court found Omni in civil contempt and stated that the award of $75,000 against Omni "is found by the court to be in the nature of punitive damages against Omni." The court also said that Papachristou could purge himself of the criminal-contempt sentence of sixty days' imprisonment "by immediately delivering to 3D all of the properties Omni was ordered to deliver . . . and the payment of $75,000.00 to 3D to make 3D whole[.]" The court concluded that delivery of the items to 3D shall in no way result in the purging of the award of $75,000.00 "punitive damages" against Omni and in favor of 3D unless such sum is paid.

Omni subsequently asked the court to amend its findings, and to stay its order pending appeal, and to declare Ark. Code Ann. § 18-60-819 unconstitutional. On May 29, 2003, an order was entered in which the circuit court set the amounts for cash or corporate bonds to be posted by Omni for various actions it might desire to take with respect to certain pieces of property. The order further fixed a supersedeas cash bond in the amount of $75,000 for Omni and bond for Papachristou in the amount of $75,000 to remain free pending the appeal of his conviction for criminal contempt. Both bonds were posted. The court denied Omni's motion to amend findings and its motion to declare Ark. Code Ann. § 18-60-819 unconstitutional.

## I. Contempt

Omni's principal contention in this appeal is that the circuit court erred in finding it in civil contempt and Papachristou in criminal contempt, because 3D failed to show that either party willfully committed any wrongful act after the entry of the February 10, 2003 order of delivery. Omni further asserts that if it

damaged or mistreated 3D's planes, 3D had an adequate remedy at law in the form of damages. It contends that there was no credible proof that Omni interfered with the delivery of the property pursuant to the court's order, and further, that the court's order was unclear in its directive to return assembled planes when the court also ordered Omni not to touch or alter the planes. Omni maintains that the circuit court erred in its findings of contempt, because the court "intermingled civil and criminal contempt." Omni urges that punishing it or its agents with contempt basically amounts to imprisonment for debt, which constitutes cruel and unusual punishment. Finally, Omni maintains that finding Papachristou in criminal contempt was error because he was never made a party to the replevin suit or the contempt action.

### a. Standard of Review for Civil or Criminal Contempt

■■ We begin by distinguishing civil and criminal contempt:

> Contempt is divided into criminal contempt and civil contempt. *Johnson* [*v. Johnson*], 343 Ark. at 197, 33 S.W.3d at 499. Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Johnson*, 343 Ark. at 197, 33 S.W.3d at 499. Civil contempt, on the other hand, protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id.* This court has often noted that the line between civil and criminal contempt may blur at times. *Id.* Our Court of Appeals has given a concise description of the difference between civil and criminal contempt. *See Baggett v. State,* 15 Ark. App. 113, 116, 690 S.W.2d 362, 364 (1985) ("[C]riminal contempt *punishes* while civil contempt *coerces.*" (emphasis in original)).

> In determining whether a particular action by a judge constitutes criminal or civil contempt, the focus is on the character of relief rather than the nature of the proceeding. *Fitzhugh v. State,* 296 Ark. 137, 138, 752 S.W.2d 275, 276 (1988). Because civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by complying with the order. *See id.* at 139, 752 S.W.2d at 276. This is the source of the familiar saying that civil contemnors "carry the keys of their prison in their own pockets." *Id.* at 140, 752 S.W.2d at 277 (quoting *Penfield Co. v. S.E.C.,* 330 U.S. 585, 593 (1947) (quoting *In re Nevitt,* 117 F. 448, 461 (8th Cir. 1902)). Criminal contempt, by contrast, carries an

unconditional penalty, and the contempt cannot be purged. *Fitzhugh*, 296 Ark. at 139, 752 S.W.2d at 276-277.

*Ivy v. Keith*, 351 Ark. 269, 279-80, 92 S.W.3d 671, 677-78 (2002).

Moreover, in *Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (1988), this court quoted from the United States Supreme Court's decision of *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624 (1988). In *Feiock*, the Court, in an attempt to distinguish between the two contempts, said:

> [T]he critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911). The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period." *Id.*, at 442. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order. These distinctions lead up to the fundamental proposition that criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt. *See, e.g., Gompers, supra*, at 444; *Michaelson v. United States ex rel. Chicago, St. P., M. & O.R. Co.*, 266 U.S. 42 (1924). [Footnote omitted.]

485 U.S. at 631-32.

■ Because we conclude that both Omni and Papachristou were actually held in civil contempt, which will be discussed later in this opinion, we apply the standard of review for civil contempt. Our standard of review for civil contempt is whether the finding of the circuit court is clearly against the preponderance of the evidence. *See Gatlin v. Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991).

*b. Clarity of the Circuit Court's Order of Delivery*

██ ██ This court has observed that willful disobedience of a valid order of a court is contemptuous behavior. *See Ivy v. Keith, supra.* However, before one can be held in contempt for violating the court's order, the order must be definite in its terms and clear as to what duties it imposes. *See Ivy v. Keith, supra.* In the instant case, the order at issue is the circuit court's order of delivery, and Omni and Papachristou assert that it is unclear.

On February 10, 2003, the circuit court directed the sheriff to immediately take possession of the property listed in Exhibit A to the order, which included specific aircraft, log books, and engines and propellers, and deliver it to 3D. The specific aircraft to be taken were listed:

> 1. Air Tractor Serial #0397 #N6072Y Engine Serial #14087 Propeller Serial #BU11092 w/GPS and all spray equipment (assembled)
>
> 2. Air Tractor Serial #0273 #N6082Y Engine Serial #PCE14031 Propeller Serial #13495 with GPS and all spray equipment (assembled)
>
> 3. Cessna Serial #18802885T #N60711 Engine Serial # _____ Propeller Serial #76208 w/GPS and all spray equipment (assembled)
>
> 4. Cessna Serial #18801829T #N9083H (unassembled)
>
> 5. Cessna Serial #18802806T #N60691 Serial #559352 Propeller Serial #747988 w/GPS and all spray equipment (assembled)
>
> 6. Cessna Serial #18803322T #N90834 (unassembled)
>
> 7. Cessna Serial #18803132T #N9084G (unassembled)
>
> 8. Cessna Serial #18803129T #N90837 (unassembled)

The order demanded that certain aircraft be assembled, and it further directed Omni not to "remove, alter, destroy or substitute any of this property or parts thereof pending delivery of the property to [3D]."

The court's order was clear as to the property and in its directives. While Omni was directed not to change or substitute parts to the property, it was not prevented from reassembling any

aircraft that had previously been disassembled. The court's order, in addition, did not preclude Omni from requesting additional time in which to reassemble the aircraft. Yet, Omni made no request for more time to comply with the order of delivery. This point has no merit.

### c. Compliance with the Order of Delivery

In 3D's petition for contempt, it listed the equipment that was missing from the aircraft that were to be delivered pursuant to the court's order of delivery. Specifically, the petition alleged that of the aircraft to be returned in assembled form, two aircraft were "disassembled and un-airworthy," one's engine was missing components and the serial number data plate, and one had the engine oil cooler removed. In addition, three aircraft had an "[i]ncorrect and incomplete GPS" (Global Positioning System) and one had no GPS system at all. Finally, one had an "[i]ncorrect and incomplete" spray system, one lacked any spray equipment, and one had an incomplete spray system. It is clear to this court that the aircraft were not turned over to 3D in an "assembled" state, as directed by the circuit court's order.

■ Furthermore, Omni's claim that the court's order was unclear and that it and Papachristou did not willfully disobey the order, because the court had told them not to "touch" the parts, does not ring true. Again, the court's order merely prevented Omni from modifying, changing, or altering the aircrafts or parts thereof. Because Omni and Papachristou failed to turn over to the sheriff assembled planes and related equipment as specified in the order of delivery, they were in contempt of that order.

### d. Adequate Remedy at Law

■ Omni claims that because 3D had an adequate remedy at law in the form of damages for any injury to its property, the circuit court erred when it held Omni and Papachristou in contempt. What Omni appears to be arguing is that the circuit court confused damages for injury to equipment with a fine for contempt. However, Omni fails to cite this court to any authority to support this proposition, and we have held time and again that we will not consider arguments unsupported by convincing argument or sufficient citation to legal authority. *See, e.g., City of Benton*

*v. Arkansas Soil & Water Conserv. Comm'n*, 345 Ark. 249, 45 S.W.3d 805 (2001).[2] That alone is sufficient reason not to address this point. *See id.*

�as already stated, this court has held that an act is contemptuous if it interferes with a court's business or proceeding, or reflects upon the court's integrity. *See Johnson v. Johnson*, 343 Ark. 186, 33 S.W.3d 492 (2000). In the case at hand, Omni and Papachristou violated the court's order of delivery when they failed to turn over specific planes and equipment and turned over instead disassembled aircraft. Although 3D may have some claim for damages in its lawsuit for the problems it has discovered, Omni and Papachristou ignored the court's order and refused to deliver to 3D all of the property it was ordered to deliver. That is a sufficient basis for a contempt award.

*e. Debtor's Prison*

Omni also contends that because 3D has an adequate remedy at law, the circuit court's punishment for contempt is analogous to "imprisoning someone . . . for what basically amounts to a debt" thereby constituting cruel and unusual punishment and violating its right to a trial by jury. Once more, Omni has failed to provide convincing argument or sufficient citation to legal authority on this point. *See City of Benton v. Arkansas Soil & Water Conserv. Comm'n, supra.* Omni merely asserts that imprisonment is only justified where there has been willful disobedience of the orders of the court. Indeed, this court said as much in *East v. East*, 148 Ark. 143, 229 S.W. 5 (1921). To repeat, in the instant case, Papachristou and Omni willfully disobeyed the court's order to return certain planes assembled. This point has no merit.

*f. The "Civil Punitive Damage" Award*

Omni next argues that the circuit court erroneously co-mingled civil and criminal contempt when it awarded $75,000 to 3D for Omni's civil contempt and made Papachristou's ability to purge his jail time conditioned on Omni's payment of that amount.

---

[2] We address the point of whether the circuit court did indeed award property damages as part of a contempt sanction under subparagraph f.

We confess to some confusion óver the contempt order. However, the circuit court, without question, found that Omni and Papachristou had willfully disobeyed its order of delivery. The court then found:

> 7. That because of the heretofore described actions of Omni and its managing officer, Tom Papachristou, Tom Papachristou is found guilty of criminal contempt and his hereby sentenced to serve sixty days in the jail at Crittenden County, Arkansas.

> 8. That because of the heretofore described actions of Omni and its managing officer, Tom Papachristou, Omni is hereby held in civil contempt of court, and 3D is awarded judgment from and against Omni in the amount of $75,000.00. Such award of $75,000.00 is found by the court to be in the nature of punitive damages against Omni.

> 9. That Tom Papachristou can purge himself of the criminal contempt sentence, and the time he is ordered by this court to serve in the Crittenden County jail, by immediately delivering to 3D all of the properties Omni was ordered to deliver including the aircraft described in paragraphs 4 and 5 herein as well as all the component parts of 3D's airplanes, including but not limited to engines, radios, GPS's and spray equipment, and other items which were not either delivered or were delivered in part only to 3D by Omni as reflected in the Report and Supplemental Report filed herein by 3D, with such parts and equipment being in proper, working condition at the time of such redelivery and the payment of $75,000.00 to 3D to make 3D whole for the value of the turbine engine parts on AT 6072Y that Tom Papachristou intentionally damaged and also substituted damaged component parts. Provided however that the delivery of these items to 3D shall in no way result in a purging of the award of $75,000.00 punitive damage against Omni and in favor of 3D unless such sum is paid.

It first appears that the circuit court held Papachristou in *criminal* contempt with sixty days to serve in jail, but then the court's order provides that Papachristou can purge himself of this contempt by immediately delivering the planes, parts, and other items at issue to 3D. We conclude that the circuit court actually cited Papachristou for *civil* contempt in that the court was coercing Papachristou to abide by its order and providing a means by which the contempt could be purged. But the court also adds that Papachristou's purging must include a payment of $75,000 to 3D

"to make 3D whole for the value of the turbine engine parts" on a plane that Papachristou intentionally damaged.

■ Omni, on the other hand, is expressly held in *civil* contempt under the court's order, and "3D is awarded judgment from and against Omni in the amount of $75,000.00[,]" which the court finds "to be in the nature of punitive damages against Omni." Later, the court states in its order that the $75,000 is "to make 3D whole for the value of the turbine engine parts on AT6072Y[.]" At the end of its order, the court adds that the delivery of the planes, parts, and other items to 3D shall in no way result in a purging of the $75,000 in punitive damages awarded against Omni and in favor of 3D. Harking back to the discussion of contempt earlier in this opinion, a contempt fine for willful disobedience which is payable to the complainant is remedial, and therefore constitutes a fine for civil contempt, but if the fine is payable to the court, it is punitive and constitutes a fine for criminal contempt. *See Hicks ex rel. Feiock v. Feiock, supra; Fitzhugh v. State, supra.* Here, the fine is to be paid to the complainant, and we conclude that it is for civil contempt.

■ We disagree, though, with the circuit court that the purging of Papachristou's contempt can rest on Omni's payment of $75,000 to 3D. The keys to the jail in civil contempt must rest in the hands of the contemnor and not a third party. We, accordingly, modify the circuit court's contempt order to eliminate Omni's payment of $75,000 as a condition for Papachristou's release from jail. Papachristou's contempt can be purged solely by delivery of the planes, parts, and other items listed in the court's order.

That leaves the issue of whether the award of $75,000 payable by Omni to 3D can be based on property damages awarded against Omni and in favor of 3D. A second question is whether the circuit court ordered $75,000 against Omni as a fine for contempt and then a second $75,000 to make 3D whole for property damage done to the turbine engine. Though the circuit court's order is somewhat ambiguous on this point, we believe, after reviewing the record, that the court's contempt order is a contempt fine against Omni, which was determined based on the damage done to 3D's turbine engine.

■ Early on, the United States Supreme Court stated that when a contemnor has committed an act forbidden by the court, "[t]he only possible remedial relief for such disobedience would

have been to impose a fine for the use of complainant, measured in some degree by the pecuniary injury caused by the act of disobedience." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444 (1911). The Eighth Circuit Court of Appeals concluded similarly when it stated that a contempt fine against an errant mortgage company for foreclosing too early "seems to be of a dual nature, with both punitive and compensating purposes." *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 782 (8th Cir. 1987). The Eighth Circuit added: "In contempt cases, the trial court has discretion to fashion the punishment to fit the circumstances." *Id.* Finally, this court has previously used compensatory damages as the measurement for fining the contemnor for violating a permanent injunction, which had enjoined the contemnor from discharging petroleum waste onto the complainant's property. *See C.R.T., Inc. v. Brown*, 269 Ark. 114, 602 S.W.2d 409 (1980). In *C.R.T., Inc.*, damage to the land caused by the additional petroleum waste became the measure of the contempt fine.

 Though the circuit court mislabeled the contempt fine in its order as "punitive damages" in the instant case, we hold that the contempt award against Omni was a fine for civil contempt in the amount of $75,000 measured in part by the damage to 3D's property. We conclude as we do because the fine for civil contempt was payable to 3D and was meant to be remedial and not to be a punishment payable to the court for criminal contempt. *See Fitzhugh v. State, supra.*

### g. Contempt for One not a Party

 Omni and Papachristou urge this court to reverse the finding of contempt against Papachristou, because 3D failed to make him a party to the action. This contention has no merit. In *Hickinbotham v. Williams*, 228 Ark. 46, 305 S.W.2d 841 (1957), this court observed that "[t]he violation or disobedience of an injunction order issued by a court having jurisdiction in the matter, when committed by a party to the injunction suit, *or by a third party having actual notice*, is a contempt of court, and is punishable as such by the tribunal issuing the order[.]" 228 Ark. at 50, 305 S.W.2d at 843 (emphasis in original) (quoting 12 AM. JUR. § 26)). We have further said that one who has full knowledge of a court order and its import cannot flout it with impunity. *See Arkansas Dep't of Human Servs. v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998). The record in this case clearly reflects that Papachristou had full

knowledge and notice of the circuit court's order of delivery. In fact, he was present and testified at the February 5, 2003 hearing concerning 3D's request for an order of delivery. We hold the notice was sufficient to find him in contempt for thwarting the resulting order of delivery.

## II. Hoskopoulus Plane

Omni next contends that the circuit court erroneously awarded Cessna N731SS to 3D and further erred in finding that Cessna N60711, which was originally delivered to 3D, was Omni's plane. Omni contends that it was undisputed that Cessna N60711, although it was registered to Omni, was owned by Ethymils Hoskopoulus. The crux of Omni's argument is that the circuit court does not have the power to award a plane that has been junked and sold for parts and that is owned by another person (Hoskopoulus) who is not a party to the lawsuit.

In its order of contempt, the circuit court made the following finding with respect to the Cessna N731SS:

> 5. That 3D is hereby awarded immediate possession of aircraft described as N731SS Serial #18803124T in the possession of Omni because such aircraft is the property of 3D that is described as aircraft #3 on Exhibit A to the Order of Delivery and Omni is directed to immediately deliver the same to 3D. That Omni is awarded immediate possession of aircraft with current substituted "N" number 60711 because such aircraft is not the property of 3D less the engine and propeller thereon that is the property of 3D.

The circuit court's conclusion is based on the fact that the data plates on the two planes were switched. This court, of course, reviews a circuit court's finding of fact following a bench trial under a clearly-erroneous standard. *See Burke v. Elmore*, 341 Ark. 129, 14 S.W.3d 872 (2000). The testimony of Patrick Lackey, a former pilot for Omni, revealed that during one season of his employment, he flew an aircraft identified as the Cessna N60711. He testified that another employee, Larry Gandy, flew the plane that was owned by Hoskopoulos. Lackey further testified that he was familiar with the interior of the Hoskopoulos plane. He added that the interior of the plane now numbered N60711 and impounded by the court was quite different from when he had flown it, and, in fact, was more similar to the interior of the Hoskopulos plane that Larry Gandy flew. He stated that as a pilot that flew the

Cessna N60711, the plane he examined in the hangar, which was identified by that number, was not N60711. Glenn Voros, who performed the aircraft audit for 3D, also testified that he found a certificate of aircraft registration for Cessna N731SS in the belly of the plane now sporting an identification number of N60711.

■ Based on this evidence presented to the trial court, we cannot say that the circuit court clearly erred in concluding that the plane marked N731SS was, in reality, N60711, which belonged to 3D. Accordingly, we affirm the court's order directing that 3D's property be returned to it.

### III. § 18-60-819

Omni next claims that during an unreported conference call, counsel for 3D made reference to Ark. Code Ann. § 18-60-819 (Repl. 2003). According to Omni, this statute is unconstitutional on its face, because it allows a person to be imprisoned for something that is in the nature of a debt. Thus, the statute, under Omni's theory, violates due process in that it allows for a law enforcement officer to arrest an individual outside of the normal judicial process. Plus, the statute leads to excessive bail and an excessive fine in violation of the United States and Arkansas Constitutions. Omni further contends that the application of the statute to the instant case where a non-party is given jail time violates due process and fundamental fairness.

■ This issue is not preserved for our review. We said in *Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003), that a general objection by a party who cites to a constitutional provision is not sufficient to preserve the constitutional questions presented on appeal without further development. *See also Harris v. State*, 320 Ark. 677, 899 S.W.2d 459 (1995). As was the case in *Raymond v. State, supra*, Omni, in its motion to declare § 18-60-819 unconstitutional, summarily stated:

> 5. That Ark. Code Ann. § 18-60-819, is unconstitutional on its face, and as applied in this case, for the following reasons, to wit:
>
> (a) It denies the right to trial by jury in violation of the U.S. and Arkansas Constitutions;
>
> (b) It constitutes cruel and unusual punishment in that it essentially allows for the incarceration of an individual for

something that is in the nature of a debt, and allows for an officer to arrest an individual even though the person arrested may not have the actual property sought;

(c) It violates due process of law in that it allows for an officer to arrest an individual outside of the normal judicial process, and subverts the right to a trial by jury;

(d) It denies an individual the right to confront witnesses;

(e) It amounts to excessive bail and an excessive fine in violation of the U.S. and Arkansas Constitutions[.]

Omni failed to cite to any authority in support of its propositions, other than merely quoting the statute at issue, or to develop its argument in any other respect. Moreover, Omni did not argue its motion to the court. Although Omni asserts that the statute was raised by 3D during a conference call with the circuit court, it concedes that the phone call was unreported and is therefore not included in the record before this court for our review.

█ It is axiomatic that this court will not strike down a legislative act on constitutional grounds without first having the benefit of a fully developed adversary case. *See Drummond v. State*, 320 Ark. 385, 897 S.W.2d 553 (1995). Omni failed not only to adequately brief this issue before the trial court, but it also failed to do so in its brief before this court. Because this issue was not fully developed at the trial-court level or on appeal, this issue is not preserved for appellate review.

### IV. FAA Reports as Hearsay

Omni argues that the FAA reports admitted into evidence as inspection reports were hearsay evidence and were admitted without any foundational proof by a records custodian to show that the reports were true public records. As a corollary argument, it contends that each FAA document amounted to expert opinion which was not subject to cross-examination and, thus, Omni and Papachristou were denied their right to confront witnesses.

█ The decision to admit or refuse evidence at trial is within the circuit court's discretion, and this court will not reverse that court's ruling absent an abuse of discretion and a showing of prejudice. *See Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740

(2003). Rule 803(8) of the Arkansas Rules of Evidence sets forth an exception to the hearsay rule and deals with public records:

> (8) *Public Records and Reports*. To the extent not otherwise provided in this paragraph, records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: (i) investigative reports by police and other law enforcement personnel; (ii) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; (iii) factual findings offered by the government in criminal cases; (iv) factual findings resulting from special investigation of a particular complaint, case, or incident; and (v) any matter as to which the sources of information or other circumstances indicate lack of trustworthiness.

Ark. R. Evid. 803(8) (2003).

 Omni challenges three documents which were reports resulting from inspections conducted by the Federal Aviation Administration. A review of all three reports reveals that each document was signed and verified by an FAA employee. All three reports, entitled "Comparison Contrast of Relative Findings," are findings resulting from investigations made pursuant to authority granted to the FAA by law. They clearly fall within the Rule 803(8) exception and do not fall within any of the five exclusions to that rule. We affirm on this point as well.

Affirmed as modified.