

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )   NO. 70549-1-I
)
SOON IM KIM, )   (Consolidated with
)   No. 70852-0-I)
     Respondent, )
)   UNPUBLISHED OPINION
  and )
)
SUNG LEE KIM, )
)   FILED: July 28, 2014
     Appellant. )

LEACH, J. — Sung Lee Kim appeals a trial court order finding him in contempt for failure to pay maintenance to his ex-wife, Soon Im Kim, as ordered in the decree of dissolution. He argues that the order violated his right to due process because his ability to purge depended on the actions of a third party not under his control. We affirm the contempt order and the trial court's award of attorney fees.

## FACTS

Soon and Sung were married in October 1976 and separated in March 2010.[1] During the marriage, Sung was employed by Delta Inn Inc., which operates a chain of hotels. Sung's older brother, Hung Gung Kim, owns Delta Inn. Following a 10-day dissolution trial in August and September 2012, the trial court made findings of fact and conclusions of law and entered a decree of dissolution. The court found that the parties maintained an extremely comfortable standard of living during their marriage. Though

---

[1] Because this case involves parties with the same last name, we refer to the parties by their first names for clarity.

the parties filed tax returns claiming earned income of between $60,000 and $90,000 per year, the evidence showed that "in the last several years of marriage, the parties were spending over $80,000 per month without incurring any debt." During the marriage, Delta Inn paid "all of [the parties'] expenses, apparently without limitation." Following the parties' separation, Sung continued to have access to unlimited funds from Delta Inn. Delta Inn paid Sung at least $800,000 in either compensation or expenses, and Sung provided "however much money any member of the family wanted or needed, including over a million and half dollars for the parties' son, Scott. . . . [who] never worked for or did anything productive for Delta Inn." The court found that Sung "treated his and his wife's money and the money of Delta Inn Inc. as fungible, and there is nothing to indicate this has changed since the parties' separation." The court concluded that Sung "has the ability to get or provide whatever income he needs or thinks he needs." The court also found that before trial Sung dissipated or attempted to place outside the court's control several community assets, including a boat and an individual retirement account. Sung also manufactured "loans" owed to Delta Inn for the purposes of litigation. The decree ordered Sung to pay maintenance to Soon of $20,000 per month for the duration of Soon's life.

On December 5, 2012, after the trial but before the court entered its written findings and decree, Sung filed a declaration claiming that he lacked the ability to pay Soon maintenance as ordered. He stated that he no longer had access to Delta Inn funds and that Delta Inn had placed him on a salary of $10,000 per month, plus "some

minor expenses," as of October 1, 2012. He argued that this limited his ability to pay maintenance to $2,600 per month.

The court entered its findings and decree on March 21, 2013. Sung did not seek appellate review of either the findings or the decree.

Sung does not dispute his failure to pay Soon maintenance as ordered by the decree. On June 5, 2013, Soon asked to have Sung found in contempt and jailed as a sanction. At the time, Sung's arrearage totaled $110,299.10, including interest. Sung filed a responsive declaration, reiterating his inability to pay Soon maintenance as ordered for the reasons stated in his earlier declaration.

The court heard argument on the motion on June 24. The court found not credible Sung's representation that the amount of money he received from Delta Inn had decreased significantly. Moreover, the court found that Sung had not demonstrated any change in his circumstances because he presented the same evidence he presented before the court entered its findings. The court made the following written findings relevant to contempt:

> 2.4    Past Ability to Comply with Order
>
> Sung Kim had the ability to comply with the order as follows:
>
>> The Court made findings regarding the Respondent's ability to pay maintenance in its Findings of Fact and Conclusions of Law entered on March 20, 2013. The Court incorporates those Findings in this Order, as the Court does not find that anything has changed. The Respondent's claim that he is now earning a salary of only $10,000 per month is neither persuasive nor credible. The Respondent failed to produce any pay information during the course of the dissolution trial in August/September

2012. It was only after the Court's oral ruling was issued that the Respondent claims to have been put on a set salary of $10,000 per month.

2.5   Present Ability and Willingness to Comply with Order

Sung Kim has the present ability to comply with the order as follows:

See paragraph 2.4 and the 3/20/2013 Findings of Fact and Conclusions of Law. The Court finds the Respondent's claims regarding his salary to be not credible.

Sung Kim does not have the present willingness to comply with the order as follows:

See paragraph 2.4 and the 3/20/2013 Findings of Fact and Conclusions of Law. Almost immediately after the Court's oral ruling was issued, the Respondent took actions to make his income appear artificially low in order to avoid paying maintenance and he has continually refused to pay maintenance as ordered through the present date. The Respondent's actions are in bad faith. The Court finds that the evidence and information provided by Respondent is the same position he presented before at trial.

. . . .

3.11   Other

The Respondent has not met his burden to prove his inability to comply by a preponderance of the evidence. The Court remains convinced Respondent is receiving more income than disclosed by him and that he has access to more than reflected in his financial declaration.

The court found Sung in contempt. The court ordered Sung's immediate confinement in the King County jail, to continue until he purged the finding of contempt by paying his maintenance obligation for July as well as $5,000 toward his arrearage,

for a total of $21,000.[2]  When Sung then informed the court that he could make immediate arrangements for payment, the court suspended the confinement provided that Sung transferred the funds by the following morning.  It continued the contempt hearing until the following afternoon to review Sung's compliance.

On June 25, an attorney appeared on behalf of Hung and Delta Inn (hereinafter Hung) and requested that the transfer of funds be stayed until Hung had the opportunity to petition this court for a stay pending appeal.  The attorney informed the court that Hung had provided the funds to Sung to enable him to comply with the court's order.  The court denied the stay.

Sung appeals the contempt order and award of attorney fees.  Hung appeals the contempt order only.

## DISCUSSION

### Hung's Standing To Appeal

As a preliminary matter, we address whether Hung has standing to appeal.  RAP 3.1 provides that only an aggrieved party many seek review by this court.  An aggrieved party is "one whose proprietary, pecuniary, or personal rights are substantially affected" by the trial court's order.[3]

---

[2] Sung had already paid $4,000 of his $20,000 obligation for July.

[3] Cooper v. City of Tacoma, 47 Wn. App. 315, 316, 734 P.2d 541 (1987) (citing Sheets v. Benevolent & Protective Order of Keglers, 34 Wn.2d 851, 855, 210 P.2d 690 (1949)).

Hung is not an aggrieved party. Nothing in the court's order purports to affect his proprietary, pecuniary, or personal rights. In fact, the court's contempt order does not even mention Hung or Delta Inn. Hung argues that the trial court's order forced him to provide funds to Sung in order to prevent Sung from being incarcerated. But Hung had no legal obligation to provide the needed funds to Sung. That brotherly affection or a sense of duty may have prompted him voluntarily to make the funds available does not make him aggrieved as contemplated by RAP 3.1. Consequently, Hung may not seek review, and we dismiss his appeal.

Standard of Review

Contempt of court occurs when, among other things, a litigant intentionally disobeys "any lawful judgment, decree, order, or process of the court."[4] Contempt proceedings may be initiated as part of a dissolution action when the party obligated to pay maintenance fails to comply.[5]

Due process requirements for contempt vary depending on whether the court imposes remedial or punitive sanctions.[6] A remedial sanction is one that is "imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform."[7] A punitive

---

[4] RCW 7.21.010(1)(b).
[5] RCW 26.18.050(1).
[6] In re Dependency of A.K., 162 Wn.2d 632, 645, 174 P.3d 11 (2007) (citing Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 n.2, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994)).
[7] RCW 7.21.010(3).

sanction, in contrast, is "imposed to punish a past contempt of court for the purpose of upholding the authority of the court."[8]

A court may find a party in contempt and impose a remedial sanction if, after notice and hearing, it "finds that the person has failed or refused to perform an act that is yet within the person's power to perform."[9] The law presumes the contemnor's ability to comply with court orders, and the contemnor has the burden to prove otherwise.[10] "The contemnor must offer evidence as to his inability to comply and the evidence must be of a kind the court finds credible."[11] In the context of failure to comply with a maintenance order, the contemnor must show that he or she "exercised due diligence in seeking employment, in conserving assets, or otherwise in rendering himself or herself able to comply with the court's order."[12] A court may impose incarceration as a remedial sanction when it serves a coercive purpose.[13]

On the other hand, when the contemnor lacks the ability to purge the contempt, incarceration as a sanction is generally considered punitive.[14] Courts may not impose a punitive sanction unless the contemnor has been afforded the same due process rights

---

[8] RCW 7.21.010(2).
[9] RCW 7.21.030(2).
[10] In re Pers. Restraint of King, 110 Wn.2d 793, 804, 756 P.2d 1303 (1988).
[11] King, 110 Wn.2d at 804.
[12] RCW 26.18.050(4).
[13] RCW 7.21.030(2)(a).
[14] In re Interest of M.B., 101 Wn. App. 425, 439, 3 P.3d 780 (2000).

as other criminal defendants, including assistance of counsel, a jury trial, and proof beyond a reasonable doubt.[15]

We review a contempt order for an abuse of discretion.[16] A trial court abuses its discretion if it exercises it in a manifestly unreasonable manner or bases its decision upon untenable grounds or untenable reasons.[17] We review a trial court's findings of fact for substantial evidence.[18] Substantial evidence is "a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true."[19] We do not substitute our judgment for the trial court's regarding conflicting evidence or the credibility of witnesses.[20] We treat unchallenged findings as verities on appeal.[21] We review de novo whether a remedial sanction's purge condition exceeds the trial court's authority or violates due process.[22]

Validity of the Contempt Order

Sung argues that the court erred by finding that he had the ability to purge the contempt. He furthermore claims that the sanction violated due process because the court imposed it for the purpose of compelling Hung, a third party, to pay Soon.

---

[15] M.B., 101 Wn. App. at 439-40.
[16] Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995).
[17] Moreman, 126 Wn.2d at 40.
[18] In re Marriage of Rideout, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003).
[19] Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).
[20] In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996).
[21] Rideout, 150 Wn.2d at 353.
[22] M.B., 101 Wn. App. at 454.

As the party challenging contempt, Sung had the burden to prove his inability to comply with the court's order. To support his claim, Sung presented evidence that Delta Inn had reduced his compensation to only $10,000 per month and expenses. But Sung had presented the same evidence at trial, and the court had found it not credible. Sung did not challenge those findings, and we treat them as verities. Sung fails to show that the trial court erred in finding that he had the ability to purge the contempt at the time of the order.

Sung's claim that the contempt order improperly coerced action by a third party lacks merit as well. As stated above, the contempt order does not require Hung or Delta Inn to pay Soon's maintenance. And the court based its finding that Sung had the ability to pay on the evidence at trial, not, as Sung suggests, upon a requirement that he access additional income from Delta Inn. Because the trial court properly found that Sung had the ability to pay maintenance as previously ordered, Sung's ability to purge did not depend on Hung or Delta Inn.[23]

---

[23] In support of his due process claim, Sung cites to a single Washington case, M.B., as well as three cases from other jurisdictions, United States v. International Brotherhood of Teamsters, 899 F.2d 143 (2d Cir. 1990), Newman v. Graddick, 740 F.2d 1513 (11th Cir. 1984), and Omni Holding & Development Corp. v. 3D.S.A., Inc., 356 Ark. 440, 156 S.W.3d 228 (2004). None of these cases are controlling or persuasive. In M.B., the court found a juvenile in contempt and sanctioned her with seven days of detention, which she could purge by enrolling in and being accepted by a substance abuse treatment program. This court held the sanction violated due process because whether the juvenile was accepted by the treatment program was not under her control. M.B., 101 Wn. App. at 457-60. In Teamsters, the appellant violated a court order enjoining him from interfering with the work of an election officer by participating in filing a lawsuit against that officer. The appellant later withdrew as a plaintiff. The court

Attorney Fees

Sung requests this court reverse the trial court's award of attorney fees incurred in connection with the contempt proceeding. He argues that fees were unwarranted because the court erred in finding him in contempt. Because the court did not err, we affirm the award of fees.

Soon requests attorney fees on appeal under RCW 26.09.140, providing for an award of fees based on the financial circumstances of the parties, and RCW 4.84.185, providing for an award of fees where "the position of the nonprevailing party was frivolous and advanced without reasonable cause." Given the trial court's award of maintenance, we deny Soon's request for attorney fees under RCW 26.09.140. And, while we find Sung's arguments to be largely without merit, we decline to hold that the appeal is frivolous or advanced without reasonable cause under RCW 4.84.185.

---

found him in contempt and required him to have the lawsuit dismissed with prejudice. The Second Circuit reversed, holding that the court could not force the appellant "to order persons whose actions he may not rightfully control to forfeit their substantial legal rights" as a condition of purging the contempt. Teamsters, 899 F.2d at 145-47. In Newman, the Attorney General of Alabama was held in contempt for the failure of other state officials to comply with a consent decree regarding prison overcrowding. The Eleventh Circuit reversed, holding the Attorney General had no authority to address prison overcrowding and was held in contempt merely as a "hostage" to spur other state officials to act. Newman, 740 F.2d at 1526-29. In Omni, the court found a managing officer in contempt and ordered that to purge the contempt, his employer must pay the opposing party $75,000. The Arkansas Supreme Court reversed, holding the "keys to the jail in civil contempt must rest in the hands of the contemnor and not a third party." Omni, 356 Ark. at 454. In contrast, the court's unchallenged finding established that Sung had the financial means to purge contempt by paying $21,000 to Soon.

-10-

Soon does not seek fees under RCW 7.21.030(3), providing for an award of fees incurred in connection with a contempt proceeding. This court will not award fees on grounds not cited by the parties.

Affirmed.

_Leach, J._

WE CONCUR:

_Verellen_

_Cox, J._